# United States Court of Appeals
## For the First Circuit

No. 03-1534

UNITED STATES OF AMERICA,

Appellee,

v.

VINCENT WINN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

Richard F. Monteith, Jr., for appellant.
Mark E. Howard, Assistant United States Attorney, with whom
Thomas P. Colantuono, United States Attorney, was on brief, for
appellee.

April 9, 2004

**TORRUELLA, Circuit Judge.**  Defendant-appellant Vincent Winn ("Winn") appeals the sentence imposed by the district court, objecting to its enhancement under the career offender provisions of the federal sentencing guidelines.  U.S.S.G. § 4B1.1.  Winn argues that the government failed to show the requisite predicate offenses because his conviction of a Class B felony under the New Hampshire escape statute, N.H. Rev. Stat. Ann. § 642:6, does not constitute a crime of violence within the meaning of the guidelines.  We disagree and affirm Winn's enhanced sentence as a career offender.

## I.  Background

On January 9, 2003, Winn pleaded guilty to conspiracy to distribute and to possess with intent to distribute fifty grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) & 846.  In the Presentence Investigation Report ("PSI Report") submitted to the district court, Winn was deemed a career offender under § 4B1.1, based in part on the predicate offense of a 1996 Class B felony conviction under N.H. Rev. Stat. Ann. § 642:6, in which it was charged that Winn did "knowingly escape from official custody in that he walked away from the Calumet Halfway House . . . after having been confined there pursuant to an order of the Hillsborough County Superior Court."  Winn had failed to return to the halfway house after a break.  Four days later, he returned and surrendered himself.

The PSI Report characterized the escape conviction as a crime of violence pursuant to U.S.S.G. § 4B1.2(a)(2). Winn objected to the report and, at the sentencing hearing on April 10, 2003, Winn argued that the non-violent nature of the escape charge could be established by looking to the New Hampshire statute under which he was charged, which, he contends, distinguishes between violent and non-violent escapes. Moreover, Winn argued, the indictment itself shows that no element of violence was alleged or charged, and the underlying facts suggest no threat of violence, as Winn voluntarily surrendered himself into custody four days after walking away.

The district court adopted the PSI Report's recommendation and deemed Winn a career offender. Winn was sentenced to 151 months imprisonment and five years of supervised release. This appeal followed.

## II. **Analysis**

We review de novo whether a crime qualifies as a crime of violence within the meaning of § 4B1.2(a)(2) and therefore as a predicate offense under § 4B1.1. United States v. De Jesús, 984 F.2d 21, 22 n.4 (1st Cir. 1993)(citing United States v. Fiore, 983 F.2d 1, 2 (1st Cir. 1992)).

The sentencing guidelines define a "crime of violence" as any federal or state offense punishable by imprisonment for more than one year that:

-3-

> (1) has as an element the use, attempted use,
> or threatened use of physical force against
> the person of another, or (2) is burglary of a
> dwelling, arson, or extortion, involves use of
> explosives, or otherwise involves conduct that
> presents a serious potential risk of physical
> injury to another.

U.S.S.G. § 4B1.2(a). Following Taylor v. United States, 495 U.S. 575 (1990), courts have taken a formal categorical approach to the question of whether a felony constitutes a crime of violence within this definition. United States v. Winter, 22 F.3d 15, 18 (1st Cir. 1994)("As a rule, this type of approach is restricted to an examination of how the legislature has defined the crime, without any concomitant inquiry into the details of the defendant's actual criminal conduct.").[1]  "Thus, rather than examining the actual circumstances underlying the earlier conviction, we examine only the statutory formulation of the crime charged . . . to see if that crime is a crime of violence for the purposes of the career offender guideline." De Jesús, 984 F.2d at 23.  In some limited circumstances, however, a court "may appropriately peruse documents

---

[1]  Although Taylor applied the categorical approach to determine what constitutes a "violent felony" under the Armed Career Criminal Act ("ACCA"), Taylor, 495 U.S. at 600-02, courts have uniformly adopted the Taylor approach for the analogous determination of what constitutes a crime of violence under the sentencing guidelines. "Given the substantial similarity between the Armed Career Criminal Act's definition of 'violent felony,' and the Sentencing Commission's definition of 'crime of violence,' authority interpreting one phrase is found to be persuasive in interpreting the other phrase." Winter, 22 F.3d at 18 n.3 (internal citations omitted).

such as the charging papers or jury instructions in order to flesh out a predicate offense inquiry."  Id. at 23 n.5.[2]

The New Hampshire escape statute under which Winn was charged provides as follows:

> I.  A person is guilty of an offense if he escapes from official custody.
>
> II.  "Official custody" means arrest, custody in a penal institution, an institution for confinement of juvenile offenders or other confinement pursuant to an order of a court.
>
> III.  The offense is a class A felony if the actor employs force against any person or threatens any person with a deadly weapon to effect the escape, except that if the deadly weapon is a firearm, he shall be sentenced in accordance with RSA 651:2, II-g.  Otherwise it is a class B felony.

N.H. Rev. Stat. Ann. § 642:6.  The statute thus distinguishes between Class A and Class B felony escapes based on the use of force or of a deadly weapon.

Winn argues that the New Hampshire statute thus distinguishes between violent and non-violent escapes, and that a Class B escape conviction can be identified as non-violent without looking beyond the charge.  The government concedes that the Class B felony of which Winn was charged does not have "as an element the use, attempted use, or threatened use of physical force against the

---

[2]  The question of exactly which documents may be considered to ascertain whether a conviction involved a violent or a non-violent crime has been raised in several cases before this court, see, e.g., United States v. Shepard, 348 F.3d 308 (1st Cir. 2003), but is not raised here.

-5-

person of another," U.S.S.G. § 4B1.2(a)(1), but argues that the charged offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2 (a)(2).

We have previously held that "even if force (actual or threatened) is not an element of the offense, a crime may still be a crime of violence if it falls within the 'otherwise' clause of subsection (ii), that is, if it 'involves conduct that presents a serious potential risk of physical injury to another.'" De Jesús, 984 F.2d at 23 (quoting U.S.S.G. § 4B1.2(a)(2)). While escape is not among the offenses, such as murder, manslaughter, and kidnapping, listed in the Sentencing Commission's application notes to § 4B1.2, this absence is not dispositive. "Expanding on the 'otherwise' clause, the application notes explain that '[o]ther offenses are included where . . . the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted . . . , by its nature, presented a serious potential risk of physical injury to another.'" De Jesús, 984 F.2d at 24 (quoting U.S.S.G. § 4B1.2, cmt. n.2).[3] The question before us, then, is

_____

[3] Winn refers us to a 1988 application note to § 4B1.2 that, in elaborating on the Sentencing Commission's definition of a "crime of violence," offered the following directive: "For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered." U.S.S.G. § 4B1.2 cmt. n.1 (1988). As this is no longer part of the notes to § 4B1.2 and no explanation is offered for its disappearance, we do not take it into consideration.

"whether [a Class B felony escape under N.H. Rev. Stat. Ann. § 642:6] is a category of crime that, by its nature, presents a substantial risk of personal injury even though its statutorily defined elements do not include the use or threat of force."  De Jesús, 984 F.2d at 24.

Our sister circuits have uniformly held that, as a categorical matter, any escape, however effected, "involves conduct that presents a serious potential risk of physical injury to another" and thus constitutes a crime of violence for the purposes of the sentencing guidelines.  United States v. Bryant, 310 F.3d 550, 554 (7th Cir. 2002)(failure to report back to halfway house constitutes a crime of violence because "every escape involves a serious potential risk of physical injury to another")(internal quotations omitted); United States v. Luster, 305 F.3d 199, 202 (3d Cir. 2002)(rejecting the argument that if an escape statute extends to "walk away" escapes the crime cannot by its nature present a serious potential risk of physical injury to another); United States v. Nation, 243 F.3d 467, 472 (8th Cir. 2001)(same)("We believe that every escape, even a so-called 'walkaway' escape, involves a potential risk of injury to others . . . . Even the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture the escapee."); United States v. Gay, 251 F.3d 950, 954-55 (11th Cir. 2001)(same); United States v. Ruiz, 180 F.3d 675, 676-77 (5th Cir. 1999)(same); United

States v. Harris, 165 F.3d 1062, 1068 (6th Cir. 1999)(same); United States v. Mitchell, 113 F.3d 1528, 1533 (10th Cir. 1997)(same); United States v. Dickerson, 77 F.3d 774, 777 (4th Cir. 1996)(same).

Circuit courts that have addressed the analogous question of whether an escape conviction qualifies as a "violent felony" under the Armed Career Criminal Act ("ACCA") have similarly applied the categorical Taylor analysis to conclude that escape, by its nature, involves "conduct that presents a serious potential risk of physical injury to another."  United States v. Jackson, 301 F.3d 59, 62-63 (2d Cir. 2002); United States v. Franklin, 302 F.3d 722 (7th Cir. 2002); United States v. Hairston, 71 F.3d 115, 117-18 (4th Cir. 1995).  In Jackson, the court reasoned that "[a]n inmate who escapes by peacefully walking away from a work site will (if he can) be inconspicuous and discreet, and will (if he can) avoid confrontation and force.  But escape invites pursuit; and the pursuit, confrontation, and recapture of the escapee entail serious risks of physical injury to law enforcement officers and the public."  Jackson, 301 F.3d at 63.

The categorical approach has thus led to the conclusion that "under the ACCA and the United States Sentencing Guidelines, escape is always a violent crime.  It is irrelevant whether the escape actually involved any violence or whether defendant was convicted under a state statute that defines escape as a nonviolent offense."  United States v. Springfield, 196 F.3d 1180, 1185 (10th

-8-

Cir. 1999). Even when the state escape statute "distinguishes between an escape effected by or facilitated by violence, versus a simple escape," the categorical approach has yielded the same conclusion, on the grounds that "[e]ven though initial circumstances of an escape may be non-violent, there is no way to predict what an escapee will do when encountered by the authorities." United States v. Turner, 285 F.3d 909, 915-16 (10th Cir. 2002).

The great majority of these cases rely on the "powder keg" rationale of United States v. Gosling:

> [E]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so. A defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time. Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

39 F.3d 1140, 1142 (10th Cir. 1994)(internal citation omitted). Winn contends that the "powder keg" rationale unjustifiably ignores the category of genuinely passive, non-violent walk-away escapes or failures to return, which he suggests present no greater risk of violence than any other arrest of a non-violent offender.

Winn's argument echoes the D.C. Circuit's recent expression of reluctance to adopt this categorical approach to escapes:

> Arguably, the approach taken by the other circuits proves too much. While it may be true that the recapture of an escapee inherently contains a risk of violent encounter between the escapee and the arresting officers, the same is true as to the capture of any lawbreaker. . . . Therefore, we are reluctant to adopt the categorical approach.

United States v. Thomas, 333 F.3d 280, 282 (D.C. Cir. 2003). The court proceeded to note that "[a] prisoner not returning to a halfway house or sneaking away from an unguarded position in the night may not inherently create a risk of harm to others." Id. at 283. In a concurring opinion under ACCA, Judge McKay of the Tenth Circuit has similarly expressed discomfort with the categorical approach to escapes, particularly when a state statute defines a failure to return as a felony escape. United States v. Adkins, 196 F.3d 1112, 1119 (10th Cir. 1999)(McKay, J., concurring)("There is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody, as in this case, and of failure to return from authorized departure from actual custody.").

As discussed above, however, the formal categorical approach is the well-established method in this Circuit for determining what constitutes a crime of violence under the

-10-

sentencing guidelines. De Jesús, 984 F.2d at 23. In fact, the initial enunciation of the "powder keg" rationale in Gosling cited to this Circuit's holding in De Jesús that larceny from the person qualifies as a crime of violence under 4B1.2 because it inherently involves the serious potential risk of injury to others, even though not every larceny will involve violence. Gosling, 39 F.3d at 1142 (citing De Jesús, 984 F.2d at 24-25).

The formal categorical approach forecloses the conclusion that a Class B felony escape under N.H. Rev. Stat. 642:6 does not present a serious potential risk of physical injury to another. The New Hampshire statute, while distinguishing escapes effected by force or with a deadly weapon, does not distinguish among types of confinement. The Class B felony, thus, covers a category of escapes that includes both Winn's failure to return from a break at a halfway house and the prisoner who manages to break out of jail by stealth. Indeed, the Supreme Court of New Hampshire has noted that "[t]he all-encompassing definition of 'official custody' in RSA 642:6 strongly supports an inference that the statute . . . was intended to govern escapes of all kinds," regardless of the institution or type of confinement. State v. Perra, 503 A.2d 814, 816 (N.H. 1985). We agree with our sister circuits that "even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to

place him in custody." Gosling, 39 F.3d at 1142. Thus, as a categorical matter, a Class B felony escape under N.H. Rev. Stat. Ann. 642:6 "involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2), and is properly characterized as a crime of violence for the purposes of career offender enhancement under the sentencing guidelines. The district court did not err in sentencing Winn as a career offender.

### III.  Conclusion

The sentence imposed by the district court is therefore **affirmed**.