**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

FRAZER SCOTT PICCOLO,
        *Defendant-Appellant.*

No. 04-10577

D.C. No.
CR-04-00083-LRH/
PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
September 15, 2005—San Francisco, California

Filed April 3, 2006

Before: Betty B. Fletcher, John R. Gibson,* and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge B. Fletcher

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

---

**COUNSEL**

Franny A. Forsman, Las Vegas, Nevada, and Arthur L. Allen, Las Vegas, Nevada, for the appellant.

Daniel G. Bogden, Las Vegas, Nevada, and Patrick Walsh, Las Vegas, Nevada, for the appellee.

---

**OPINION**

B. FLETCHER, Circuit Judge:

Appellant Frazer Scott Piccolo appeals the district court's determination that his conviction for walkaway escape from a halfway house is a "crime of violence" under United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") § 4B1.1 and that he is accordingly a "career offender" under that provision. Because we hold that the district court erred in determining that any escape is a crime of violence, we reverse and remand for resentencing.

**I**

On April 9, 2003, Piccolo, while residing at the Clark Community Corrections Center, a non-secure halfway house in Las Vegas, Nevada, left to attend a drug treatment meeting and did not return.[1] He voluntarily turned himself in on Febru-

---

[1]At that time, he was serving the remaining months of a 63-month sentence after pleading guilty to one count of bank robbery under 18 U.S.C.

ary 25, 2004, and was charged with escape under 18 U.S.C. § 751(a). Piccolo entered a guilty plea.

The Presentence Investigation Report categorized Piccolo's walkaway escape as a crime of violence, subjecting him to the career-offender provision of the Sentencing Guidelines in light of his prior convictions for crimes of violence. That provision, U.S.S.G. § 4B1.1, provides that a defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Piccolo did not contest the designations regarding the prior crimes in district court.[2] Rather, he claimed that § 4B1.1 is not applicable to him because walkaway escape, the instant offense, is not a crime of violence.

The district court expressed doubt whether Piccolo's escape could be deemed a crime of violence, noting, "I don't view a walk away from the Clark Center as in the same category as classic escapes obviously." The district court also stated, "the facts of Mr. Piccolo's case are about as far removed from a crime of violence of any — as any crime of violence I've personally had in front of me . . . . It's — this is a halfway house,

---

§ 2113(a).

[2]These included a 1994 conviction for burglary under Nevada Revised Statutes 205.060; a 1995 conviction for attempted burglary under Nevada Revised Statutes 205.060 (burglary) and 193.330 (attempt); and the 1998 federal conviction for Bank Robbery in violation of 18 U.S.C. § 2113(a), for which Piccolo was confined at the time of his escape.

he did walk away, there was no threat to anyone . . . ." Ulti-
mately, however, the district court ruled that under the analy-
sis set forth in *Taylor v. United States*, 495 U.S. 575 (1990),
all escapes, as a matter of law, constitute crimes of violence.
Piccolo was sentenced as a career offender to 37 months
under the enhanced Sentencing Guidelines range. This timely
appeal followed.[3]

## II

We review the district court's interpretation of the Sentenc-
ing Guidelines de novo. *United States v. Cantrell,* 433 F.3d
1269, 1279 (9th Cir. 2006). We also review de novo the deter-
mination of career-offender status under U.S.S.G. § 4B1.1.
*United States v. Kelly*, 422 F.3d 889, 891-92 (9th Cir. 2005).

Under U.S.S.G. § 4B1.2, a "crime of violence" is defined
as any offense under federal or state law punishable by
imprisonment for a term exceeding one year that —

    (1)   has as an element the use, attempted use, or
          threatened use of physical force against the per-
          son of another, or

    (2)   is burglary of a dwelling, arson, or extortion,
          involves use of explosives, or otherwise
          involves conduct that presents a serious poten-
          tial risk of physical injury to another.

Because escape is neither specifically enumerated under
U.S.S.G. § 4B1.2 nor has as "an element the use, attempted
use, or threatened use of physical force against the person of

---

[3]In the proceedings before the district court, defense counsel asserted
that, had Piccolo not been deemed a career offender, his Sentencing
Guidelines range would have been 15 to 21 months, including a four-level
reduction for escape from a non-secure community-correction center. *See*
U.S.S.G. § 2P1.1(b)(3).

another," the offense, to qualify as a crime of violence, must fall within the "catchall" provision of § 4B1.2(a)(2) for "conduct that presents a serious potential risk of physical injury to another."

**[1]** The "categorical approach" outlined in *Taylor* governs our inquiry of the question whether a particular conviction satisfies the specified elements of a sentence-enhancement provision. Under the categorical approach, we "do not examine the facts underlying the prior offense, but 'look only to the fact of conviction and the statutory definition of the prior offense.' " *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc) (quoting *Taylor*, 495 U.S. at 602). We then "determine whether 'the fact of conviction and the statutory definition of the prior offense' demonstrate that [the defendant] could not have been convicted of an offense outside the guideline definition." *United States v. Shumate,* 329 F.3d 1026, 1029 (9th Cir. 2003) (citing *Corona-Sanchez*, 291 F.3d at 1203).[4] If we find that the relevant statute would support a conviction not defined as a crime of violence under § 4B1.2, the prior "conviction does not qualify as a predicate offense." *Corona-Sanchez*, 291 F.3d at 1203.

**[2]** We apply the categorical approach "in a variety of sentencing contexts." *United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001) (en banc). Moreover — and crucial to this case — we apply it without regard to whether the given offense is a prior offense or the offense of conviction.

In *United States v. Amparo*, 68 F.3d 1222, 1224-26 (9th Cir. 1995), we applied the categorical approach to a current

---

[4]In the limited circumstances where such materials prove insufficient to make that determination, we adopt a modified categorical approach and expand the inquiry to include "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States,* 125 S.Ct. 1254, 1257, 1263 (2005); *see also Kelly*, 422 F.3d at 895.

conviction under 18 U.S.C. § 924(c)(3)(B) to hold that possession of an unregistered sawed-off shotgun is a crime of violence. *Amparo* noted that, when determining questions of law, we adopt a categorical approach in lieu of "the circumstantial or case-by-case method that requires the district court to inquire into the facts of the particular case." *Id.* at 1225 (quoting *United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir. 1993) (internal quotation marks omitted)). Moreover, in the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime. *See Amparo*, 68 F.3d at 1224-26; *see also Mendez*, 922 F.2d at 1489-91 (applying categorical approach to hold that current offense of conspiracy to rob under 18 U.S.C. § 1951 is a crime of violence under § 924(c)(3)(B)); *United States v. Springfield*, 829 F.2d 860, 862-63 (9th Cir. 1987) (same with respect to involuntary-manslaughter conviction). We considered the possibility of using a case-by-case approach when reviewing the instant crime of conviction but declined to do so in light of our general commitment to deciding rules of law on categorical grounds. *Amparo*, 68 F.3d at 1225-26. Although the categorical analysis is driven in part by a policy decision to "avoid 'ad-hoc mini-trials regarding an individual's *prior* convictions' during sentencing hearings," *Amparo*, 68 F.3d at 1225 (emphasis added) (citing *United States v. Sherbondy*, 865 F.2d 996, 1008 (9th Cir. 1988)), the absence of that particular problem did not preclude us from adopting the categorical approach.[5]

---

[5]It is by no means certain that other "practical difficulties" with a case-by-case approach would not equally complicate adjudications of current offenses. For instance, in the situation where a defendant pleads guilty, there may be insufficient facts available to determine whether the offense was a violent felony. *See Taylor*, 495 U.S. at 601. Moreover, it would be unfair to impose an enhancement in a situation where the facts indicated a violent felony but the defendant had pleaded guilty to a lesser, non-violent charge. *Id.* at 601-02.

**[3]** We have consistently applied categorical analysis in determining whether a prior offense satisfies a sentence-enhancement provision of the Sentencing Guidelines. *See, e.g.*, *United States v. Pimentel-Flores*, 339 F.3d 959, 967-68 (9th Cir. 2003) (holding that the question whether defendant's prior conviction is a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(1) is subject to categorical approach); *Shumate*, 329 F.3d at 1029 (same with respect to career-offender status under U.S.S.G. § 4B1.2). The logic of *Amparo* dictates that we do the same with respect to current offenses. Accordingly, the crime-of-violence determination under U.S.S.G. § 4B1.2, a legal question, is properly decided under *Taylor*'s categorical analysis in cases of both prior and current offenses.[6]

## III

**[4]** As previously noted, the definition of "crime of violence" under U.S.S.G. § 4B1.2 does not specifically mention "escape." Moreover, an escape under § 751(a) does not have as "an element the use, attempted use, or threatened use of physical force against the person of another." Thus, we decide whether the "catchall phrase" of U.S.S.G. § 4B1.1 applies to the crime of escape.

**[5]** The general escape statute provides in pertinent part, "Whoever escapes or attempts to escape from . . . any institu-

---

[6]The Fourth Circuit applies the categorical approach to an instant offense in determining whether that offense qualifies as a crime of violence under the Sentencing Guidelines. *See United States v. Martin*, 215 F.3d 470, 472-75 (4th Cir. 2000) (concluding that a current bank-larceny offense is not a crime of violence for purposes of U.S.S.G. § 4B1.1); *United States v. Johnson*, 953 F.2d 110, 114 (4th Cir. 1992) (rejecting distinction between prior offenses and the instant offense for purposes of categorical analysis). The Tenth Circuit takes the opposite approach. *See United States v. Riggans*, 254 F.3d 1200, 1203-04 (10th Cir. 2001) (rejecting the categorical approach in favor of "a conduct-specific inquiry" when considering the instant offense of conviction).

tion or facility in which he is confined by direction of the Attorney General . . . shall, if the custody or confinement is by virtue of . . . [a] conviction of any offense . . . be fined under this title or imprisoned not more than five years, or both . . . ." 18 U.S.C. § 751(a). The statute does not differentiate between violent and non-violent escapes; the statutory definition of the crime runs the gamut from maximum-security facilities to non-secure halfway houses.

[6] We think that the circumstances apparent in a walkaway escape are of an entirely different order of magnitude than escapes from jails and prisons. Residents of halfway houses have certain privileges of ingress and egress, do not live behind concrete walls and barbed wire, and are not under constant surveillance by armed guards. Those who leave without returning do not pose an automatic risk of danger and therefore do not categorically raise a serious potential risk of physical harm. Thus, convictions for walkaway escape could clearly take place "on the basis of conduct that did not present a serious potential risk of physical injury to another." *Kelly*, 422 F.3d at 893.

[7] *Kelly* is instructive. In *Kelly*, we held that a prior conviction for attempting to elude a police vehicle did not constitute a crime of violence. *Id.* at 893-95. The circumstances in *Kelly* involved close physical confrontation under circumstances leading to a much greater possibility of violence than walkaway escape. The offense in *Kelly* also contained an "endangerment" provision not present in the escape statute at bar, making the latter offense, by comparison, even less likely to qualify as a "crime of violence." We conclude that *Kelly* controls the outcome of this case, resolving, *a fortiori*, that a walkaway escape is not a crime of violence. Because 18 U.S.C. § 751(a) makes possible a conviction for "an offense outside the guideline definition," *Shumate,* 329 F.3d at 1029,

it does not automatically meet the specified criteria triggering the career-offender provision of the Sentencing Guidelines.[7]

A few additional points are noteworthy. First, the Sentencing Guidelines specifically call for a four-level reduction in cases of escape from non-secure facilities. *See* U.S.S.G. § 2P1.1(b)(3). Under the government's theory, a current conviction for a walkaway escape from a non-secure facility is a crime of violence which, when coupled with two or more prior convictions that qualify as crimes of violence, triggers the career offender enhancement, thereby dramatically increasing the offense level. In the absence of such priors, however, the defendant would be entitled to a four-level *reduction* in the Sentencing Guidelines range. We do not see how these two positions can be reconciled.

The Commentary to U.S.S.G. § 4B1.2 is also informative. It expressly states that the definition of "crime of violence" shall not include unlawful possession of a firearm by a felon. U.S.S.G. § 4B1.2 cmt. n.1. That Congress would explicitly exclude this particular crime from the "catchall" clause of U.S.S.G. § 4B1.2(a)(2), yet implicitly include a non-violent walkaway escape of the sort at issue in this case, seems unlikely.

A number of our sister circuits, relying on *Taylor*, have held that any escape, however effected, categorically constitutes a crime of violence under the Sentencing Guidelines. *See, e.g., United States v. Winn*, 364 F.3d 7, 12 (1st Cir. 2004)

---

[7]Our conclusion that a conviction for escape under § 751(a) does not categorically qualify as a crime of violence does not preclude the government from demonstrating, under a modified categorical approach, that a specific conviction for escape would meet the requisite standard. *See Corona-Sanchez*, 291 F.3d at 1211. Although we have previously left open the question whether the modified categorical approach applies to cases arising under the "catchall" provision, *see Kelly*, 422 F.3d at 895; *United States v. Parker*, 5 F.3d 1322, 1326 (9th Cir. 1993), we see no reason why it would not apply to that provision.

(the "categorical approach forecloses the conclusion" that failure to return to a halfway house would not "present a serious risk of injury to another"); *United States v. Bryant*, 310 F.3d 550, 554 (7th Cir. 2002) (failure to report back to halfway house constitutes a crime of violence because "every escape involves a serious potential risk of physical injury to another") (internal quotations omitted); *United States v. Luster*, 305 F.3d 199, 202 (3d Cir. 2002) (holding that escape qualifies as a crime of violence); *United States v. Gay*, 251 F.3d 950, 954-55 (11th Cir. 2001) (per curiam) (same); *United States v. Nation*, 243 F.3d 467, 472 (8th Cir. 2001) (same); *United States v. Ruiz*, 180 F.3d 675, 676-77 (5th Cir. 1999) (same); *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999) (same); *United States v. Mitchell*, 113 F.3d 1528, 1533 (10th Cir. 1997) (same); *United States v. Dickerson*, 77 F.3d 774, 777 (4th Cir. 1996) (same). Courts have similarly applied *Taylor* in analogous circumstances to rule that an escape conviction qualifies as a "violent felony" under the Armed Career Criminal Act. *United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003); *United States v. Franklin*, 302 F.3d 722, 724 (7th Cir. 2002); *United States v. Jackson*, 301 F.3d 59, 62 (2d Cir. 2002); *United States v. Hairston*, 71 F.3d 115, 117-18 (4th Cir. 1995).

The majority of these circuits liken an escape to a "powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so." *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994); *see also Winn*, 364 F.3d at 11; *Nation*, 243 F.3d at 472. That theory apparently renders all escapes, including those that take place without incident, crimes of violence under the Sentencing Guidelines.

Our view is that the powder-keg "approach taken by the other circuits proves too much." *United States v. Thomas*, 333 F.3d 280, 282 (D.C. Cir. 2003). While an escapee who flees a secured facility or the custody of an armed guard presents

a serious risk of injury to himself and others, the same cannot be said for an escapee who leaves a halfway house with permission and fails to return. *See Thomas*, 333 F.3d at 283 (distinguishing the case of "[a] prisoner not returning to a halfway house," which "may not inherently create a risk of harm to others"); *United States v. Adkins*, 196 F.3d 1112, 1119 (10th Cir. 1999) (McKay, J., concurring) ("There is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody . . . and of failure to return from authorized departure from actual custody."). We therefore decline the opportunity to join the other circuits that have held that any escape is a crime of violence.

The record is clear that Piccolo left the unsecured facility with permission to attend a drug treatment program. This is a far cry from a scenario where an escapee flees a guarded prison or the custody of an armed official. And, as mentioned earlier, the district court noted the nonviolent nature of the offense.[8]

[8] Ordinarily, following a determination that an offense does not categorically qualify as a crime of violence, we would turn to the modified categorical approach and examine the conviction with reference to additional relevant evidence. *See Shepard*, 125 S.Ct. at 1257, 1263. That step is unnecessary in this case, however, given our recognition that walkaway escapes that involve no violence or potential for violence — such as the one committed here by Piccolo — are the very reason that convictions under § 751(a) sweep too broadly to qualify as a crime of violence.

---

[8]The district court, noting Piccolo's "particularly egregious felony history," seems to have assumed that when presented with "a defendant with this kind of a criminal history the Court has to view that this particular offense would qualify as a crime of violence." But Piccolo's criminal history has no bearing on the question whether the escape is a crime of violence, though it could be a factor in considering the proper sentence under the appropriate Sentencing Guidelines range.

**IV**

**[9]** Although *Taylor* provides the appropriate framework for determining whether a current offense constitutes a crime of violence, a conviction for escape under 18 U.S.C. § 751 does not necessarily "involve[ ] conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2), and is therefore not a crime of violence under the Sentencing Guidelines. We reverse and remand for resentencing.[9]

**REVERSED AND REMANDED.**

---

[9]Given our conclusion that the instant offense is not a crime of violence, we need not address Piccolo's claim that his previous offenses also do not qualify as crimes of violence or his Sixth Amendment challenge.