

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-2007

# USA v. Faines

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4006

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Faines" (2007). *2007 Decisions.* Paper 1633.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1633

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4006

UNITED STATES OF AMERICA

v.

TYRONE FAINES,
                              Appellant

On Appeal from the United States District Court
for the District of Delaware
D.C. Criminal No. 04-cr-0053-1
(Honorable Sue L. Robinson)

Argued January 22, 2007

Before:  SCIRICA, *Chief Judge*, FUENTES and CHAGARES, *Circuit Judges*

(Filed:  February 14, 2007)

ELENI KOUSOULIS, ESQUIRE (ARGUED)
Office of Federal Public Defender
First Federal Plaza, Suite 110
704 King Street
Wilmington, Delaware 19801
        Attorney for Appellant

LEONARD P. STARK, ESQUIRE (ARGUED)
FERRIS W. WHARTON, ESQUIRE
Office of United States Attorney
1007 North Orange Street, Suite 700
Wilmington, Delaware 19801
        Attorneys for Appellee

SCIRICA, *Chief Judge*.

Tyrone Faines appeals his conviction for armed bank robbery, 18 U.S.C. § 2113(a), carrying a firearm during a crime of violence, 18 U.S.C. § 924(c), and conspiracy to commit bank robbery, 18 U.S.C. § 371. Faines also appeals his sentence. We will affirm both the conviction and sentence.

**I.**

On January 14, 2004, two masked individuals robbed a branch of Sun National Bank in downtown Wilmington, Delaware. (App. at 131.) Wilmington Police Department Officer Philip Jackson lifted seven latent fingerprints[1] from the bank immediately following the robbery. (App. at 304–10.) Less than one month later, on February 3, 2004, two masked individuals robbed a branch of Artisans Bank, also in downtown Wilmington. (App. at 164–64.) Surveillance cameras outside of Artisans Bank captured pictures of the robbers' getaway car. (App. at 205–17.) The robberies followed a similar pattern, in which one armed individual stood guard at the bank's front, while the second individual jumped over the teller counter and collected money from bank employees. (App. at 116–17, 131–32, 167–68.)

---

[1] Latent fingerprints are prints left on evidence at a crime scene that "are often not visible to the naked eye until dusted or otherwise revealed." *United States. v. Mitchell*, 365 F.3d 215, 221 (3d Cir. 2004).

On February 19, 2004, Wilmington Police Department officers spotted a car that matched the getaway car. Instead of heeding the officers' signal to stop, the car's driver, later identified as defendant Faines (App. at 276), led police on a high speed chase, during which the passengers threw guns and clothing out of the car's windows. (App. at 245–47, 278–79.) Police subsequently arrested Faines and inked his fingerprints and palm prints. (App. at 225–26.) The fingerprint match, robbery-related items recovered from Faines's car, and the similarities between the two robberies led to Faines's prosecution.

A federal grand jury returned a six-count superceding indictment on September 9, 2004, charging Faines with two counts each of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1), and conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371.[2]

During the three-day jury trial, Faines and the government each called an expert to testify about fingerprint analysis. Sergeant Joseph Sammons, offered by the government as an "expert witness in the area of fingerprint comparison and identification," testified he found a match between the defendant's inked palm prints and fingerprints and three latent prints found at Sun National Bank. (App. at 352, 374–79.) Dr. Lyn Haber, offered by Faines "as an expert in fingerprint methodology and the accuracy of fingerprint analysis," extensively critiqued the accuracy of fingerprint analysis in her direct testimony, and

---

[2] Counts I, II, and III related to the Sun National Branch robbery and Counts IV, V, and VI related to the Artisans Bank robbery.

offered specific criticism of the methodology used by Sergeant Sammons to match Faines's prints. (App. at 454–76.) On redirect examination, the defense showed Dr. Haber the left inked palm print taken from Faines and a latent print found at Sun National Bank and asked her whether "there is anything in there that would cause you to doubt the match in this case, any dissimilarity?" (App. at 482.) Dr. Haber responded, "I want to start with the latent, major crease (indicating), you can see that it's very narrow at this end and then very wide here (indicating). It doesn't correspond to the major crease that's shown in the inked print." (App. at 482.) Shortly thereafter, the District Court restricted Dr. Haber's testimony on the basis that the expert was not qualified to perform an actual fingerprint comparison. (App. at 483–84.)

On March 30, 2005, the jury returned a guilty verdict on Counts I, II, and III, but acquitted defendant on the remaining three counts. (App. at 10.) On August 17, 2005, the District Court sentenced Faines to 360 months in prison[3] and entered its judgment of conviction on August 23, 2005. The defendant timely appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the District Court's ruling on the admissibility of expert testimony for abuse of discretion.

---

[3] On Count I, the District Court sentenced Faines to 276 months in prison, five years of supervised release, $16,650 in restitution, and a $100 special assessment. On Count II, the District Court sentenced Faines to a consecutive sentence of 84 months in prison, five years of supervised release to run concurrently with Count I, and a $100 special assessment. On Count III, the District Court sentenced Faines to a concurrent 60 months in prison, a concurrent three years of supervised release, and a $100 special assessment.

4

*See United States v. Velasquez*, 64 F.3d 844, 847–48 (3d Cir. 1995). "To show an abuse of discretion, appellants must show the district court's action was arbitrary, fanciful or clearly unreasonable. We will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002) (internal quotations and citations omitted). We exercise plenary review over the district court's interpretation of the Federal Rules of Evidence. *See Velasquez*, 64 F.3d at 848; *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001).

## III.

Faines contends the District Court abused its discretion by limiting the scope of his fingerprint expert's testimony. Federal Rule of Evidence 702 governs the use of expert testimony, and provides that an expert must be qualified with specialized knowledge before offering an expert opinion.[4] *See Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003) ("Qualification refers to the requirement that the witness possess specialized expertise.") Rule 702, amended in 2000 to incorporate the standards set forth in *Daubert*

---

[4] Rule 702 provides:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), "affirms the trial court's role as gatekeeper." Fed. R. Evid. 702 advisory committee's note; *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003) ("An expert may be generally qualified but may lack qualifications to testify outside his area of expertise."). On appellate review, the standard of review for Rule 702—abuse of discretion—guides our decision. "[W]e will not substitute our own judgment for that of the trial court regarding the admission or exclusion of expert testimony." *Waldorf v. Shuta*, 142 F.3d 601, 627 (3d Cir. 1998).

The District Court did not abuse its discretion in limiting the expert testimony of Dr. Haber. It made a reasoned decision to limit her testimony when the court believed Dr. Haber had begun to perform an actual fingerprint comparison on re-direct examination. The court noted Dr. Haber was not offered as an expert qualified to make a fingerprint comparison, and accordingly, it found "this witness was not qualified to do the actual examination" on re-direct. (App. at 484.) In its closing argument, the defense admitted as much, noting Dr. Haber is "not a latent fingerprint examiner. That's not what she was qualified to do." (App. at 540–41.)

Dr. Haber testified she was a research scientist, not a latent fingerprint examiner. (App. at 437.) The record shows she had extensively read the literature in the field, published one article on the topic of fingerprint analysis, had taken three courses in fingerprint comparison, but had never before testified in court on fingerprint analysis or comparison. (App. at 437–39, 448.) Although Dr. Haber testified she had performed an

6

estimated 6,000 fingerprint comparisons, she admitted "almost all of them were in conjunction with the three courses. I've done a few on my own . . . maybe 50. Not very many. " (App. at 448–49.)  In contrast, Sergeant Sammons had over twenty years of experience in fingerprint classification and analysis for the Wilmington Police Department, with over nine years in the Identification Unit where he spent approximately 95% of his time classifying and comparing latent to inked fingerprints. (App. at 347a.) Sergeant Sammons testified he had compared "tens of thousands" of latent to inked prints, (App. at 349a.), testified in over twelve criminal cases in state and federal court, and had never been found to have made a false identification. (App. at 352, 399.)  As noted, the District Court only limited Dr. Haber's actual fingerprint comparison, which was outside her professed area of expertise.[5]

The record demonstrates the District Court did not limit Dr. Haber's testimony about matters for which she was qualified. On direct and re-direct examination, Dr. Haber criticized Sergeant Sammons's fingerprint analysis in general and his technique specifically. On direct examination, Dr. Haber testified about various distortions in the prints contending that Sergeant Sammons used an improper methodology in his print comparison. (App. at 469.)  She testified "each of these latent prints contains factors that

_____

[5] The District Court did not exclude Dr. Haber's testimony because she was not the best qualified expert in latent fingerprint comparison, but because she was not offered as an expert qualified in latent fingerprint comparison at all. *Cf. Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) ("[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified. . . .").

7

make it easier to make a mistake . . . ." (App. at 469.) After describing the factors at issue, Dr. Haber stated "[t]he various factors I'm talking about are kinds of distortions . . . [and] Sergeant Sammons did not look for distortions in the latent [prints] before making his comparison." (App. at 471.) Later in direct examination, Dr. Haber reiterated that "there are differences between the latents and the inked prints, but they have not been accounted for. There's no description of the problem areas in the latent . . . [or] the differences in these two prints . . . ." (App. at 475.) Nevertheless on appeal, Faines contends that on re-direct Dr. Haber would have offered testimony to identify "distortions and dissimilarities in the [latent and inked] prints that remained unexplained by [Sergeant] Sammons." (Appellant Reply Br. 2.) But the record demonstrates that Dr. Haber had already testified about this on direct examination. In any event, the District Court did not abuse its discretion in limiting what would have been cumulative testimony.[6]

## IV.

---

[6] Federal Rules of Evidence 403 and 611 provide for the scope of a court's discretion in excluding cumulative evidence. *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 753–54 (3d Cir. 2000) (finding district court's exclusion of evidence on the ground it was cumulative did not abuse its discretion and was "rational and consistent with the terms of Rules 403 and 611"). Rule 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the . . . needless presentation of cumulative evidence." Fed. R. Evid. 403. Rule 611(a) instructs district courts to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time." Fed. R. Evid. 611(a).

Faines contends the District Court erred in calculating his sentence by considering his prior offense of attempted escape as a crime of violence, which enhanced his sentence as a career offender under the Sentencing Guidelines. Ordinarily, "[w]hether a particular crime constitutes a crime of violence is a question of law and our review is plenary," *United States v. Luster*, 305 F.3d 199, 200 (3d Cir. 2002), but our review here is for plain error because the defendant did not raise this issue in the District Court, *see, e.g.*, *United States v. Lloyd*, 469 F.3d 319, 321 (3d Cir. 2006).

In *Luster*, we held escape is a crime of violence under the Sentencing Guidelines because every escape "always has the serious potential" to "explode into violence." *Luster*, 305 F.3d at 202 (internal quotations omitted). The District Court did not commit plain error in following this Court's precedent. Faines contends we should reconsider *Luster* due to a changed landscape on this issue among our sister courts of appeals.[7] At the time we decided *Luster*, we noted "[e]very circuit to consider this issue has reached

---

[7] Faines cites *United States v. Piccolo*, 441 F.3d 1084 (9th Cir. 2006), and *United States v. Thomas*, 333 F.3d 280 (D.C. Cir. 2003), to support his contention the landscape has changed regarding sentencing for escape. In the interim since Faines submitted his brief, the Court of Appeals for the District of Columbia reaffirmed its finding that escape qualifies as a crime of violence under the Sentencing Guidelines. *See United States v. Adewani*, 467 F.3d 1340, 1341 (D.C. Cir. 2006) ("We have previously held that escape is a crime of violence within the meaning of the Guidelines, *United States v. Thomas*, 361 F.3d 653, 660 (D.C. Cir. 2004), *vacated on other grounds*, 543 U.S. 1111, 125 S.Ct. 1056, 160 L.Ed.2d 1045 (2005), and we reaffirm that holding here."); *cf. United States v. Chamber*s, No. 06-2405, 2007 WL 60874, at *2 (7th Cir. Jan. 9, 2007) (adhering to precedents that categorize all escapes as crimes of violence, and refusing to carve out an exception for noncustodial escapes, but calling into question the propriety of "lump[ing] all escapes together . . .").

9

the same conclusion." *Id.* This observation largely remains the same, with all courts of appeals but the Ninth Circuit concluding escape is a crime of violence. *See, e.g.*, *United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006); *United States v. Winn*, 364 F.3d 7, 12 (1st Cir. 2004); *United States v. Jackson*, 301 F.3d 59, 62–63 (2d Cir. 2002); *United States v. Dickerson,* 77 F.3d 774, 777 (4th Cir. 1996); *United States v. Ruiz*, 180 F.3d 675, 676–77 (5th Cir. 1999); *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999); *United States v. Golden*, 466 F.3d 612, 614 (7th Cir. 2006); *United States v. Nation*, 243 F.3d 467, 472 (8th Cir. 2001); *United States v. Turner*, 285 F.3d 909, 915–16 (10th Cir. 2002); *United States v. Gay*, 251 F.3d 950, 954–55 (11th Cir. 2001). *But see United States v. Piccolo*, 441 F.3d 1084, 1089–90 (9th Cir. 2006). Whatever views have been expressed by the Ninth Circuit (on walk-away escapes), we perceive no changed landscape on custodial escapes.[8] We find no error in the District Court's determination that this conduct qualifies as a crime of violence.

## V.

We will affirm both the conviction and sentence.

---

[8] Although not significant in terms of our jurisprudence set forth in *Luster*, we note Faines had previously attempted escape from a custodial facility.

10