[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13139

_____

D.C. Docket No. 05-00004-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON DANIEL TAYLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(June 13, 2007)**

Before CARNES, WILSON and HILL, Circuit Judges.

PER CURIAM:

Jason Daniel Taylor pled guilty to one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The district court adjudged him to be an armed career criminal pursuant to 18 U.S.C. § 924(e)(1), because he had three prior convictions for violent felonies and sentenced him to 72 months' imprisonment, to be followed by a five-year term of supervised release.[1] Taylor appeals this sentence. We review the district court's interpretation and application of the Sentencing Guidelines *de novo*. *United States V. Gibson*, 434 F.3d 1234, 1243 (11th Cir. 2006).

## I.

Under 18 U.S.C. § 924(e), the Armed Career Criminal Act (the "ACCA"), a person who violates § 922(g) and who has three previous convictions for a "violent felony," a serious drug offense, or both, is an armed career criminal and subject to imprisonment for a period of not less than fifteen years. Under the ACCA, the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that has an element of physical force or "presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

---

[1] Taylor's advisory sentencing guideline range as an armed career criminal was 168-210 months. The district court departed downward based upon the government's Section 5K1.1 motion.

*See also United States v. Rainey*, 362 F.3d 733, 734 (11th Cir. 2004).

We have recognized that "[i]n determining whether a particular offense falls within this definition, the Supreme Court has directed trial courts to pursue a categorical approach, 'looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'" *United States v. Wilkerson*, 286 F.3d 1324, 1325 (11th Cir. 2002) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). *See also James v. United States*, 127 S. Ct.1586, 1594 (2007) (we "do not generally consider the 'particular facts disclosed by the record of conviction'") (internal citations omitted). We may look beyond the "fact of conviction and the statutory definition of the prior offense" to the "particular facts underlying those convictions" only in "a narrow range of cases" where it is impossible to determine from the face of the judgment or the violated statute whether the prior conviction was for a violent felony. *Taylor*, 495 U.S. at 600, 602. *See also Shepard v. United States*, 544 U.S. 13, 17 (2005).

We have previously held that escape is a crime of violence for the purpose of determining career offender status under § 4B1.2 of the Sentencing Guidelines. *United States v. Gay*, 251 F.3d 950, 952 (11th Cir. 2001). We have also held that our cases interpreting "crime of violence" under § 4B1.2 provide important guidance in determining what is a "violent felony" under the ACCA "because the

3

definitions for both terms are virtually identical." *Rainey*, 362 F.3d at 735.

Therefore, we hold that, just as under the Guidelines, escape is a violent felony for

purposes of determining armed career criminal status under the ACCA.[2]

## II.

Taylor pled guilty to escape in a Florida court. There is no ambiguity in the

fact of his conviction for escape. Therefore, the district court was bound by

*Taylor* and *Wilkerson* to apply our rule that escape is a violent felony as

contemplated by the ACCA categorically to Taylor's prior escape conviction.[3] In

so doing, the district court correctly found that Taylor had three prior convictions

for a violent felony and adjudicated him to be an armed career criminal under

§ 924(e)(1) of the ACCA. Accordingly, the district court's sentence is without

---

[2]We note that this interpretation of § 924(e) is consistent with most of our sister circuits. See *United States v. Childs*, 403 F.3d 970, 971 (8th Cir. 2005); *United States v. Moore*, 401 F.3d 1220, 1226 (10th Cir. 2005); *United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003); *United States v. Franklin*, 302 F.3d 722, 723-25 (7th Cir. 2002); *United States v. Jackson*, 301 F.3d 59, 61-63 (2d Cir. 2002); *United States v. Houston*, 187 F.3d 593, 594-95 (6th Cir. 1999). *But see United States v. Piccolo*, 441 F.3d 1084, 1088 (9th Cir. 2006) (escape from halfway house not categorically a crime of violence under Guidelines).

[3]Taylor's argument that we should undertake to distinguish between his non-violent "failure to return"to a halfway house and other types of escapes is foreclosed by the Supreme Court's mandate in *Taylor* to apply a categorical approach to violent felony determinations and our subsequent conclusion in *Gay* that escape is categorically a violent felony. *Gay*, 251 F.3d at 955 (offense of escape a crime of violence even when it involves a "walk-away" from unsecured correctional facilities); *see also United States v. Jackson*, 301 F.3d 59 (2d Cir. 2002) (under the categorical approach, regardless of the underlying facts, a conviction under Florida escape statute *always* a violent felony under § 924(e)).

legal error and is due to be

AFFIRMED.

HILL, Circuit Judge, concurring *dubitante*, in which WILSON, Circuit Judge, joins:

Although I concur under the authority of *Gay*, I am not persuaded that it was correctly decided. I wish to join a tiny, but growing, chorus of doubt that a district court is permitted to enhance a sentence under the ACCA based in part upon a "failure to return" prior escape conviction.

Under § 924(e)(1), the district court is entitled to count as a "violent felony" for enhancement purposes a prior conviction for "conduct that presents a serious potential risk of physical injury to another." In 1994, the Tenth Circuit held that escape is categorically such a violent felony because "every escape scenario is a powder keg," *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994). Since then, every other court of appeals, save the D.C. and the Ninth Circuits, has adopted this rule.[4]

Although *Gosling* involved a prior conviction based upon an unauthorized departure from actual custody, some circuits have since specifically approved enhancements based upon escape convictions for "failure to return" to a halfway

---

[4]The Ninth Circuit refused to permit the enhancement, holding that a peaceful failure to return accompanied by the defendant's voluntary surrender four days later, is not a crime of violence under the Sentencing Guidelines. *United States v. Piccolo*, 441 F.3d 1084, 1089-90 (9th Cir. 2006). The D.C. Circuit reserved the same issue in *United States v. Thomas*, 333 F. 3d 280, 282-83 (D.C. Cir. 2003). As the panel opinion observes, the courts uniformly treat "crimes of violence" under the Guidelines and "violent felonies" under the ACCA the same.

house after work-release. *United States v. Mathias*, 482 F.3d 743, 746 (4ᵗʰ Cir. 2007); *United States v. Rivera*, 127 Fed. Appx. 543, 545 (2d Cir. 2005) (same); *United States v. Winn*, 364 F.3d 7, 11 (1ˢᵗ Cir. 2004) (failure to return to halfway house after break); *United States v. Bryant*, 310 F.3d 550, 554 (7ᵗʰ Cir. 2002) (failure to return after work-release). In support of this holding, these courts have agreed with *Gosling's* speculation that:

> A defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. . . . [E]ven in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious risk that injury will result when officers find the defendant and attempt to place him in custody.

39 F.3d at 1142.

But, even as the circuits clambered aboard the "escape as a violent felony" bandwagon, there were a few skeptics. Five years after its decision in *Gosling*, the Tenth Circuit, observing that it was bound by circuit precedent, affirmed an enhancement for a non-violent escape. In a special concurrence, however, Judge McKay took pains to distance himself from the panel's assumption that *Gosling*

7

established that escape was categorically a crime of violence. *United States v. Adkins*, 196 F.3d 1112, 1119 (10th Cir. 1999) (McKay, J., concurring). Judge McKay asserted that it is wrong to assume that escape always constitutes "conduct that presents such a serious potential risk of physical injury to another," as required by the ACCA. Specifically pointing to state statutes that make failure to return from work-release or other inmate release programs a felony escape, he wrote "[t]here is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody, as in this case, and of failure to return from authorized departure from actual custody." *Id.* To interpret the ACCA to permit enhancement based upon the latter type of escape, he concluded, would be an "abuse of language and a departure from the text of the statute." *Id.*

In 2003, the D.C. Circuit specifically reserved the question of whether escape is categorically a crime of violence. *United States v. Thomas*, 333 F.3d 280, 282 (D.C. Cir. 2003). The court observed that the argument that recapture of an escapee inherently contains a risk of violent encounter between the escapee and the arresting officers "proves too much." The court noted that "the same is true as to the capture of any lawbreaker," and that under this approach "all crimes become crimes of violence." *Id.* The court declined to adopt such a rule.

In 2004, the First Circuit in *Winn* noted the reservations of both the D.C. Circuit and Judge McKay, quoting them both. Nonetheless, the court acknowledged that "the formal categorical approach is the well-established method in this Circuit for determining what constitutes a crime of violence," and concluded that this approach "forecloses the conclusion" that a failure to return escape may be treated differently from a jail breakout. *Winn*, 364 F.3d at 12.

In 2006, however, the Ninth Circuit, in a failure to return case, refused to hold that escape is categorically a crime of violence. *United States v. Piccolo*, 441 F.3d 1084, 1088 (9th Cir. 2006). The court reasoned that "[w]hile an escapee who flees a secured facility or the custody of an armed guard presents a serious risk of injury to himself and others, the same cannot be said for an escapee who leaves a halfway house with permission and fails to return." *Id.* at 1089. Echoing Judge McKay, the court concluded that the "circumstances apparent in a walkaway escape are of an entirely different order of magnitude than escapes from jails and prisons." Because of these differences, the court concluded that "convictions under [the federal escape statute] sweep too broadly to qualify as a crime of violence." *Id.* at 1088, 1090.[5]

---

[5]The court also noted that the Sentencing Guidelines specifically call for a four-level reduction in the sentence for conviction of escape from non-secure facilities, finding this fact "irreconcilable" with the position that the same escape can later trigger a fifteen-year mandatory

Finally, in *United States v. Chambers*, 473 F.3d 724 (7ᵗʰ Cir. 2007), reviewing an enhancement based upon a "failure to report to prison" escape conviction, Judge Posner wrote:

> As an original matter, one might have doubted whether failing to report to prison, as distinct from escaping from a jail, prison, or other form of custody, was a crime that typically or often "involves conduct that presents a serious potential risk of physical injury to another." You could show up an hour late (without an excuse) and be guilty of a felony that could result in your receiving a 15-year mandatory minimum sentence under the Armed Career Criminal Act.

*Id.* at 725 (internal citation omitted).

Recognizing that his circuit, like the vast majority, is bound by the categorical approach to escape, Judge Posner held that "we shall adhere to the precedents *for now*." *Id.* at 726 (emphasis supplied). He added:

> But it is an embarrassment to the law when judges base decisions of consequence on conjecture, in this case a conjecture as to the possible danger of physical injury posed by criminals who fail to show up to begin serving their sentences or fail to return from furloughs or to halfway houses.

*Id.*

He further noted that the speculation in *Gosling* about the possibility of violence during recapture of an escapee is "conjecture floating well free of any

---

minimum sentence. *Piccolo*, 441 F.3d. at 1088.

10

facts – even the facts of *Gosling*." *Id.* at 727.[6]  He wrote:

> The opinion says nothing about the nature of Gosling's escape, but the reference to escaping from a jail suggests that the court wasn't thinking about walkaway escapes, or failure to return or report, but about jail breaks . . . .  Its ruminations should not be treated as authoritative in a case that does not involve a jail break.

*Id.*

Judge Posner suggests that both the Sentencing Commission and the Congress should address this problem.[7]  In the interim, I wish to express my agreement with those who reject the rule that escape is categorically a violent felony.[8]

---

[6]My conjecture is that prisoners who fail to return to halfway houses are inviting re-arrest in order to avoid the imminent release implied by the halfway house stage of incarceration.  Such prisoners seek the security of incarceration.  I speculate that they are among the *least* likely escapees to resist rearrest.  In the absence of proof otherwise, I doubt that my speculation is any less reliable than that of the *Gosling* court.

[7]"The Sentencing Commission, or if it is unwilling a criminal justice institute or scholar, would do a great service to federal penology by conducting a study comparing the frequency of violence in escapes from custody to the frequency of violence in failure to report or return.  Should it turn out that the latter frequency is very low, this would provide a powerful reason to reexamine *Bryant* and *Golden*.  Alternatively, Congress, which has investigative tools, might examine the issue with a view toward a possible clarification of 18 U.S.C. § 924(e)(1)." *Chambers*, 473 F.3d at 724.  Recently, in *James*, the Supreme Court cited *Chambers* in its discussion of the relevance of empirical analysis in the determination of whether an unenumerated crime poses a serious risk of violence.  127 S. Ct. at 1596.

[8]Like the Florida statute at issue in this case, many state statutes define a failure to return to a halfway house as "escape."  *See* Fla. Stat. § 945.091(4).  Thus, a conviction for or plea of guilty to such a statute – even for a failure to return – counts as a violent felony.  In *Taylor*, however, the Supreme Court reaffirmed that ordinarily federal law is not to be construed so that its application is dependent upon state law.  495 U.S. at 590.  Applying that principle to the meaning of burglary as used in the ACCA, the Court rejected Missouri's definition of burglary in

11

favor of a "generic" meaning and remanded the case to the trial court to determine if the defendant's conviction for burglary in that case corresponded to such a generic definition. *Id.* at 602.

This, it seems to me, presents a sensible solution to the problem of categorizing escape as a violent felony. Adoption by the federal courts of a generic federal definition of escape that would include unauthorized departures from actual custody, but exclude a failure to return after an authorized departure from a non-secure facility would further the intent of the statute to enhance the sentences of defendants with prior convictions for crimes with a "serious potential for violence," without permitting that intent to be trumped by "technical definitions and labels under state law." *Taylor*, 495 U.S. at 590.

Judge Posner makes a similar suggestion in *Chambers*: "There would be no impropriety in dividing escapes, for purposes of "crime of violence" classification, into jail or prison breaks on the one hand and walkaways, failure to report, and failure to return, on the other. The sentencing judge would not have to dig beneath the charging document or the other, limited evidence on which a judge is permitted by *Shepard v. United States*, 544 U.S. 13 (2005), to decide which bin a conviction for escape belonged in." 473 F.3d at 726.