In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-2405

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DEONDERY CHAMBERS,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:05-cr-40044-JLF—**G. Patrick Murphy**, *Chief Judge*.

_____

ARGUED DECEMBER 13, 2006—DECIDED JANUARY 9, 2007

_____


Before POSNER, MANION, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to being a felon in possession of a firearm. The judge, finding that the defendant had committed three crimes of violence previously, sentenced him to 188 months as an armed career criminal. 18 U.S.C. § 924(e). The only question presented by the appeal is whether one of those convictions, a conviction under Illinois law for escape, was indeed a crime of violence. The answer depends on whether escape "involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(1). A jail break does; but Illinois defines felonious

escape not only as "intentionally escap[ing] from a penal institution or from the custody of an employee of that institution" but also as "knowingly fail[ing] to report to a penal institution or to report for periodic imprisonment at any time." 720 ILCS 5/31-6(a). The defendant's escape was in the latter category—failing to report to a penal institution. The charging document is not in the record, but as summarized in the presentence investigation report and not challenged by the defendant it states that on four occasions he failed to report on schedule to a penal institution after being convicted for drug possession, robbery, and aggravated battery.

As an original matter, one might have doubted whether failing to report to prison, as distinct from escaping from a jail, prison, or other form of custody, was a crime that typically or often "involves conduct that presents a serious potential risk of physical injury to another." *United States v. Golden*, 466 F.3d 612, 616-17 (7th Cir. 2006) (Williams, J., dissenting). You could show up an hour late (without an excuse) and be guilty of a felony that could result in your receiving a 15-year mandatory minimum sentence under the Armed Career Criminal Act. Had the defendant been sentenced without the enhancement, his guidelines sentencing range would have been 130 to 162 months. See U.S.S.G. §§ 2K2.1(a)(2), (b)(5), 3C1.2, E1.1(a), (b).

But the majority opinion in *Golden*, tracking our earlier opinion in *United States v. Bryant*, 310 F.3d 550 (7th Cir. 2002), refused to carve the Illinois escape statute at the joint, as it were, but held instead that *any* violation of the statute is a crime of violence for purposes of the Act. The other courts of appeals, except the D.C. and Ninth Circuits, are in accord. *United States v. Winn*, 364 F.3d 7 (1st Cir. 2004); *United States v. Luster*, 305 F.3d 199, 202 (3d Cir.

2002); *United States v. Jackson,* 301 F.3d 59, 63 (2d Cir. 2002); *United States v. Turner,* 285 F.3d 909, 915-16 (10th Cir. 2002); *United States v. Gay,* 251 F.3d 950 (11th Cir. 2001) (per curiam); *United States v. Nation,* 243 F.3d 467, 472 (8th Cir. 2001); *United States v. Ruiz,* 180 F.3d 675 (5th Cir. 1999); *United States v. Harris,* 165 F.3d 1062, 1068 (6th Cir. 1999); *United States v. Mitchell*, 113 F.3d 1258, 1533 (10th Cir. 1997). The D.C. Circuit reserved the issue in *United States v. Thomas,* 333 F.3d 280, 282-83 (D.C. Cir. 2003). See also *United States v. Adkins*, 196 F.3d 1112, 1119 (10th Cir. 1999) (McKay, J., concurring), and Judge Rovner's concurring opinion in our *Golden* case. The Ninth Circuit ruled that a peaceful failure to return, followed by the defendant's turning himself in rather than being recaptured, is not a crime of violence. *United States v. Piccolo*, 441 F.3d 1084 (9th Cir. 2006).

All these cases involved either a failure to return to a halfway house—a type of failing to return that seems even less violence-prone than failing to show up at prison, because a violent prisoner would be less likely to be serving a part of his sentence in a halfway house—or a "walkaway" escape, which does not involve breaking out of a building or wrestling free of guards. There would be no impropriety in dividing escapes, for purposes of "crime of violence" classification, into jail or prison breaks on the one hand and walkaways, failures to report, and failures to return, on the other. The sentencing judge would not have to dig beneath the charging document or the other, limited evidence on which a judge is permitted by *Shepard v. United States*, 544 U.S. 13 (2005), to decide which bin a conviction for escape belonged in.

But we shrink from trying to overrule a decision that is only a few months old (*Golden* was decided on October 25,

2006), that tracked an earlier and materially identical decision of this court (*Bryant*), and that has overwhelming support in the decisions of the other circuits. The defendant has not presented us with arguments or evidence that were overlooked or unavailable in the previous cases. He cites us to *United States v. Hagenow*, 423 F.3d 638, 644-45 (7th Cir. 2005), which held that because the offense of "confinement" in Indiana can be committed without endangering the person confined, the sentencing judge has to look behind the label of the defendant's conviction to see whether his conduct endangered anyone. But the defendant in this case is not asking for a deeper investigation into the circumstances of his failure to report. He is asking us to carve out noncustodial from custodial escape, and that is the move rejected in *Bryant* and *Golden*, as well as in the cases we cited from other circuits.

We shall adhere to the precedents for now. But it is an embarrassment to the law when judges base decisions of consequence on conjectures, in this case a conjecture as to the possible danger of physical injury posed by criminals who fail to show up to begin serving their sentences or fail to return from furloughs or to halfway houses. The head of the line of cases that lump all escapes together, *United States v. Goslin*, 39 F.3d 1140, 1142 (10th Cir. 1994), states in colorful language quoted in many of the subsequent cases that "every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious *potential* to do so . . . . A defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees . . . .

[E]ven in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious risk that injury will result when officers find the defendant and attempt to place him in custody." (Emphasis in original.) This is conjecture floating well free of any facts—even the facts of *Goslin*. The opinion says nothing about the nature of Goslin's escape, but the reference to escaping from a jail suggests that the court wasn't thinking about walkaway escapes, or failures to return or report, but about jail breaks (most jail breaks are stealthy). Its ruminations should not be treated as authoritative in a case that does not involve a jail break.

The Sentencing Commission, or if it is unwilling a criminal justice institute or scholar, would do a great service to federal penology by conducting a study comparing the frequency of violence in escapes from custody to the frequency of violence in failures to report or return. Should it turn out that the latter frequency is very low, this would provide a powerful reason to reexamine *Bryant* and *Golden*. Alternatively, Congress, which has investigative tools, might examine the issue with a view toward a possible clarification of 18 U.S.C. § 924(e)(1).

The most helpful analysis of escapes from United States prisons that we have found, Richard F. Culp, "Frequency and Characteristics of Prison Escapes in the United States: An Analysis of National Data," 85 *Prison J.* 270 (2005), unfortunately excludes from its study "walkaways from minimum-security facilities, failures to return from approved absences, and escapes from custody staff while being transported outside," *id.* at 275, although almost 90 percent of all escapes are walkaways. *Id*. at 278; Camille Graham Camp & George M. Camp, "The Corrections Yearbook 1997" 18 (Criminal Justice Institute, Inc., 1997).

And while the Culp study includes recaptures after an escape, it does not reveal whether a recapture involved violence. *Id.* at 281-82. More than 6 percent of the escapees committed crimes while on the lam, and many of these were violent crimes, *id*. at 285-86, but that is not evidence that escape itself is likely to be violent; for all that appears, the escapees were merely resuming their previous criminal careers. Six percent of the escapes in the study involved violence against prison staff, *id*. at 285—violence on the way out, as it were—but there is no indication of how many of the recaptures (some 75 percent of escaped prisoners are recaptured, *id*. at 282) involved violence. The study notes that records of prison escapes are not standardized and that recapture data are even less reliable than escape data. *Id.* at 271, 277, 281.

It is apparent that more research will be needed to establish whether failures to report or return have properly been categorized by this and most other courts as crimes of violence. Notice too that if courts insist on lumping all escapes together in determining whether escape is a crime of violence, the enormous preponderance of walkaways could well compel a conclusion that escape is never a crime of violence. Some disaggregation seems indicated, but to do it sensibly we judges need data.

AFFIRMED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
