# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 6, 2007        Decided March 23, 2007

No. 03-3030

UNITED STATES OF AMERICA,
APPELLEE

v.

VINCENT ANDREWS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00255-01)

*Lisa B. Wright*, Assistant Federal Public Defender, was on the brief for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III*, *David B. Goodhand*, and *Matthew P. Cohen*, Assistant U.S. Attorneys.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Concurring opinion filed by *Senior Circuit Judge* WILLIAMS.

GRIFFITH, *Circuit Judge*: This appeal presents the issue of whether the district court committed plain error when it held that the appellant's prior conviction for first-degree sexual abuse of a ward was a crime of violence under the Sentencing Guidelines. Because we find that the district court did not plainly err, we affirm the sentence.

## I.

While a police officer with the District of Columbia Metropolitan Police Department ("MPD") in September 1998, appellant Vincent Andrews booked a woman who had been arrested for prostitution. With the woman in his sole custody, Andrews drove her a short distance away from the police station and stopped the car where she performed oral sex on him in the backseat. After returning to the police station, Andrews realized that the woman had kept the condom used during the sexual encounter. When she refused to give him the used condom, he tackled her, held her down, and groped her, ultimately recovering the condom from her person. The woman immediately reported the incident to other police officers at the station, and Andrews was arrested. After a jury trial, he was convicted in November 1999 in the District of Columbia Superior Court of first-degree sexual abuse of a ward, tampering with physical evidence, obstruction of justice, and simple assault. Andrews was sentenced to two to six years imprisonment, with all but one year suspended. He was also fired from the MPD.

In January 2002, Andrews visited a law enforcement equipment store and, allegedly holding himself out as a police officer, attempted to purchase police equipment. The owner refused to make the sale and notified the police. The police executed a search warrant on Andrews's apartment and discovered a shotgun. Andrews was charged with false personation of a police officer and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). After a jury trial in November 2002, Andrews was convicted on the weapons charge but was cleared of impersonating a police officer. It was his sentencing on this conviction that gave rise to the current appeal.

The presentence investigation report ("PSR") prepared by the Probation Office relied on the federal Sentencing Guidelines and reported a base offense level of 20 for Andrews's firearm conviction because it determined that his prior conviction for first-degree sexual abuse of a ward was a "crime of violence." *See* U.S.S.G. § 2K2.1(a)(4)(A). Andrews did not argue to the district court that the prior D.C. conviction was not a crime of violence. Had Andrews's prior conviction not been a "crime of violence," his offense level would have been 12 rather than 20. In addition, Andrews would have been able to invoke as a defense to his sentence the terms of § 2K2.1(b)(2), which provides a base offense level of 6 if the firearms were possessed for "lawful sporting purposes or collection." *Id.* § 2K2.1(b)(2). Andrews attempted to interpose that defense to the PSR, arguing that his gun was a "collectible" because it was forty years old. The district court rejected Andrews's argument because the "collectible" exception is not available to those who have been previously convicted for a crime of violence. *See* Transcript of Sentencing Proceedings at 15, *United States v. Andrews*, Crim. No. 02-255 (D.D.C. Mar. 4, 2003); *see also* U.S.S.G. § 2K2.1(a)(4). A base offense level of 20 corresponds to a recommended sentence range of 41-51

months. A level of 12 corresponds to 15-21 months. A level of 6 corresponds to 2-8 months. The district court's conclusion that Andrews's prior conviction was a crime of violence increased the sentencing range for his firearms conviction from a possible level of 6 or more likely level of 12 to a base offense level of 20. Being found to have previously committed a crime of violence therefore provides a significant "bump" to a sentence for felon in possession of a firearm.

## II.

Because Andrews failed to argue to the district court that his conviction for first-degree sexual abuse of a ward was not a crime of violence, we review his sentence only for plain error. *See, e.g.*, *United States v. (Adrian) Williams*, 358 F.3d 956, 966 (D.C. Cir. 2004) (citing FED. R. CRIM. P. 52(b)). "Plain error" occurs "where (1) there is error (2) that is plain and (3) that affects substantial rights, and (4) the court of appeals finds that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Johnson*, 437 F.3d 69, 74 (D.C. Cir. 2006) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). Our sole inquiry here is whether it was an "obvious" error. *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994) (quoting *Olano*, 507 U.S. at 734). "Obviousness is assessed from the perspective of the trial court; the error must be 'so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)). Were we considering this case under a more rigorous standard of review, we might need to address the more difficult methodological issues regarding how a sentencing court should regard prior convictions that are discussed so cogently in Judge Williams's concurrence. We need not reach these issues to dispose of the appeal because we are convinced that the district court did not plainly err.

To determine whether the district court committed an "obvious" error by categorizing Andrews's prior conviction for first-degree sexual abuse of a ward as a crime of violence, we start with the definition of crime of violence in the Guidelines:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (emphasis added). To analyze whether Andrews's prior conviction fits within that definition of crime of violence, we "must look only to the statutory definition [of the crime for which he has been convicted], not to the underlying facts or evidence presented." *United States v. Mathis*, 963 F.2d 399, 408 (D.C. Cir. 1992) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). Under this categorical approach, if the statutory definition itself does not yield an obvious answer, for example, where it covers both violent and non-violent crimes, we can then look to "the charging paper and jury instructions" to determine whether a jury was required to find elements supporting the determination that the prior conviction was a crime of violence. *Taylor*, 495 U.S. at 602; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005).

Under D.C. law, first-degree sexual abuse of a ward is defined as "a sexual act with another person . . . when that other person [i]s in official custody, or is a ward or resident, on a

permanent or temporary basis, of a hospital, treatment facility, or other institution." D.C. CODE § 22-3013 (formerly § 22-4113). "Sexual act" covers a variety of conduct, including vaginal sex, anal sex, oral sex, and penetration by other objects. *Id.* § 22-4101(8) (1998) (repealed 2000). Because physical force—the touchstone of the first prong of the Guidelines' definition of "crime of violence"—is not an element of first-degree sexual abuse of a ward, we must look to the second prong of the definition—whether this conduct "presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). As we have observed, "[t]he issue, then, is whether the offense of [first-degree sexual abuse of a ward]—as a category—carries appreciably less risk of injury to another than do the listed crimes [burglary, arson, extortion]." *United States v. Thomas*, 361 F.3d 653, 660 (D.C. Cir. 2004). Because consent is not a defense to this crime, *see* D.C. CODE § 22-3017 (formerly § 22-4117), and the statute covers a wide range of conduct, it is possible to imagine situations in which the statute could be violated without posing "a serious potential risk of physical injury to another." As per *Taylor*, we therefore look to the indictment and jury instructions to see what the jury actually determined.

The jury instructions make clear the conduct for which Andrews was convicted. The jury was charged to find whether Andrews engaged in a "sexual act" with the victim "[t]hat is contact between his penis and her mouth." Trial Transcript at 35, *United States v. Andrews*, No. 6601-98 (D.C. Super. Ct. Sept. 21, 1999). Our determination is therefore limited to the question of whether oral sex with a ward, as a categorical determination, "presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). We note two factors, sufficient to withstand plain error review, that suggest this crime could present a serious potential risk of physical injury. First, there exists a potential risk of injury that is

inherent in the coercive nature of the supervisor-ward relationship. The fact that consent is not a defense to sexual abuse of a ward, *see* D.C. CODE § 22-3017 (formerly § 22-4117), might be taken to demonstrate that District legislators believed there existed an inherent power imbalance in the relationship. Although it is an open question that we need not resolve whether the coercive nature of the relationship alone might be enough to make this a crime of violence, there is also in the very nature of the sex act a risk of exposing the victim to sexually transmitted infections. *See, e.g.*, Sarah Edwards & Chris Carne, *Oral Sex and the Transmission of Non-Viral STIs*, 74 SEXUALLY TRANSMITTED INFECTIONS 95-100 (1998) (providing a comprehensive literature review on the role of oral sex in transmitting infections). For those reasons, it is not "obvious" to us that first-degree sexual abuse of a ward does not constitute a crime of violence, and the district court did not plainly err in so finding.

Andrews's argument to the contrary fails to the extent that it relies on consent not constituting a defense to first-degree sexual abuse of a ward. Although the unavailability of a consent defense could conceivably criminalize behavior that might not involve violent behavior, this court "cannot accept the defendant[']s contention that an offense is not categorically a crime of violence unless every such offense is." *Thomas*, 361 F.3d at 659 n.11 (internal quotation marks and citation omitted). Just because Andrews "can hypothesize circumstances in which [first-degree sexual abuse of a ward] can be committed without either force or risk or injury cannot be dispositive under § 4B1.2(a), as such an analytical approach would eviscerate the notion of a 'categorical' definition." *Id.* at 658. Andrews's reliance on the comments of the judge who sentenced him on first-degree sexual abuse of a ward, *see* Appellant's Br. at 17-20, also misses the mark for two reasons. First, that judge did not consider whether sexual abuse of a ward is a crime of violence

under the federal Sentencing Guidelines. Second, we are compelled to make a categorical determination, but Andrews's arguments rely upon the underlying facts supporting the conviction. *See Mathis*, 963 F.2d at 408 (citing *Taylor*, 495 U.S. at 602). Finally, Andrews cites to no authority supporting his view that first-degree sexual abuse of a ward is not a crime of violence. We have yet to consider the issue, and other circuits that have considered the analogous situation of statutory rape (for which consent is also not a defense) have generally found that to be a crime of violence. *See, e.g.*, *United States v. Asberry*, 394 F.3d 712, 717-18 (9th Cir. 2005); *see also United States v. Searcy*, 418 F.3d 1193, 1196-98 (11th Cir. 2005) (holding that use of interstate commerce channel to entice minor into sexual contact is a crime of violence). *But see United States v. Houston*, 364 F.3d 243, 248 (5th Cir. 2004). As we described the matter in a similar sentencing case: "Whatever one might say about the merits of [appellant's] argument, it certainly does not leap from the text of the Guideline and the commentary. We could hardly expect the district court to come up with it *sua sponte*." *United States v. (Norman) Williams*, 350 F.3d 128, 130 (D.C. Cir. 2003).

## III.

Because the district court did not plainly err when it considered first-degree sexual abuse of a ward as a crime of violence for sentencing under the federal Guidelines, the judgment of the district court is affirmed.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, concurring:  I join the majority opinion, but write separately to discuss some principles that I believe underlie our decision.  I particularly want to address the relation between:  (1) *Taylor v. United States*, 495 U.S. 575 (1990), which prescribes how a sentencing court should assess whether a prior conviction was for a "crime of violence"; (2) *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which excepts prior convictions from the requirement of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that factors increasing a sentence beyond the statutory maximum be found by a jury beyond a reasonable doubt; and (3) conventional principles of issue preclusion.

In *Taylor* the Supreme Court held that a court sentencing under the Armed Career Criminal Act could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was a "crime of violence."[1]  The Court affirmed this narrow exception to Congress's "categorical approach" in *Shepard v. United States*, 544 U.S. 13 (2005), but strictly curtailed recourse to a larger set of sources, such as police reports.

The rationale and scope of *Taylor*'s exception pose difficult methodological questions.  Why are we limited to the indictment, information, and jury instructions?  And are we limited as to which facts we may draw from those sources?  In the present case, the happenstance that our review is only for

---

[1] Although *Taylor* specifically involved prior burglaries, its holding covered other predicate offenses under that statute, as well as its residual provision for prior crimes involving "serious potential risk of physical injury," see 495 U.S. at 600 n.9, which parallels the provision at issue here, i.e., § 2K2.1(a)(4)(A) of the U.S. Sentencing Guidelines.

plain error has largely mooted these questions; future courts will often lack that advantage.

In *Shepard* at least four members of the Court suggested that *Taylor* reflects Sixth Amendment concerns subsequently voiced in cases such as *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999), and *Apprendi*, 530 U.S. at 490. See *Shepard*, 544 U.S. at 24; but see *id.* at 37 (O'Connor, J., dissenting) ("[T]oday's decision reads *Apprendi* to cast a shadow possibly implicating recidivism determinations, which until now had been safe from such formalism."). And, indeed, *Taylor* does mesh nicely with the *Almendarez-Torres* exception from *Apprendi*. *Taylor directs* courts to look to the fact of prior conviction, and *Almendarez-Torres allows* them to rely on that fact without meeting *Apprendi*'s requirement of a jury finding beyond a reasonable doubt.

Resting *Taylor*'s exception on the rationale of *Almendarez-Torres* may raise more questions than it answers, however. *Almendarez-Torres* itself relied on an arguably formalistic distinction between elements and sentencing factors, see 523 U.S. at 229-35, a distinction that has since been heavily eroded by the *Apprendi* line. See *Shepard*, 544 U.S. at 27 (Thomas, J., concurring) ("*Almendarez-Torres*, like *Taylor*, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided."); see also *Apprendi*, 530 U.S. at 520-21 (2000) (Thomas, J., concurring); but see *Harris v. United States*, 536 U.S. 545 (2002). The question is whether *Taylor* can survive these developments, and in what form, or whether its exception now amounts to constitutional error, as Justice Thomas has suggested. Compare *Shepard*, 544 U.S. at 27 (Thomas, J., concurring) ("*Taylor* and today's decision thus explain to lower courts how to conduct factfinding that is, according to the logic of this Court's intervening precedents,

unconstitutional in this very case."), with *id*. at 30-31 (O'Connor, J., dissenting) ("*Taylor* left room for courts to determine which other reliable and simple sources might aid in determining whether a defendant had in fact been convicted of generic burglary. . . . I would expand that list to include *any* uncontradicted, internally consistent parts of the record from the earlier conviction.").

Fortunately, I believe *Taylor*'s readiness to rely on charging documents and jury instructions can be sustained independently of *Almendarez-Torres*'s historical treatment of recidivism as a sentencing factor, namely, by reliance on an entirely non-formalistic principle of litigation: issue preclusion.

The standard application of issue preclusion requires that a party be estopped from relitigating an identical issue previously decided if three conditions are satisfied:

> (1) The issue must have been actually litigated, that is contested by the parties and submitted for determination by the court.

> (2) The issue must have been actually and necessarily determined by a court of competent jurisdiction in the first trial.

> (3) Preclusion in the second trial must not work an unfairness.

*Milton S. Kronheim & Co. v. District of Columbia*, 91 F.3d 193, 197 (D.C. Cir. 1996) (internal punctuation omitted).

Though most applications of issue preclusion occur in civil litigation, the "principle is as applicable to the decisions of criminal courts as to those of civil jurisdiction." *Frank v. Mangum*, 237 U.S. 309, 334 (1915). Most invocations in the

criminal arena are by the defendant, on the basis of either the Double Jeopardy Clause, *Ashe v. Swenson*, 397 U.S. 436, 447 (1970), or due process more generally, see Akhil Reed Amar & Jonathan L. Marcus, *Double Jeopardy Law After Rodney King*, 95 Colum. L. Rev. 1, 31 (1995) ("[T]he *Ashe* idea must be rooted outside the strict text of the Double Jeopardy Clause, in the more spacious—but also more flexible, less absolute—language of due process."). See, e.g., *Green v. United States*, 426 F.2d 661 (D.C. Cir. 1970) (per curiam) (precluding the Government from relitigating a question of fact determined in defendants' favor in a previous partial verdict). Offensive uses in criminal suits are extremely rare, see Richard B. Kennelly, Jr., *Precluding the Accused: Offensive Collateral Estoppel in Criminal Cases*, 80 Va. L. Rev. 1379 (1994) (collecting cases), despite judicial acknowledgements of the theoretical appropriateness, as in *Frank v. Mangum*. One reason may be that issue preclusion is inapt for the superficially most inviting use—cases where a prior conviction is an element of the new crime; there, the only necessary "fact" is the existence of the prior conviction itself. *Id.* at 1381-82 n.12.

But for sentencing provisions that turn on particular characteristics of a prior conviction, the court must decide not only the fact of conviction but the facts determined by that conviction. And in this context, a sentencing court would seem able to rely on issue preclusion without offending any of the interests reflected in the *Apprendi*-line of cases. After all, the facts to be introduced and precluded from contestation at sentencing will have been established beyond a reasonable doubt by a jury (unless waived).

Moreover, reliance on the principles of preclusion provides contour to the holdings of *Taylor* and *Shepard*, while at the same time providing support for *Almendarez-Torres*'s outcome without the formalism of its analysis. First, by

focusing on precluded issues, it becomes clear why *Taylor* and *Shepard* limited inquiry to charging documents and jury instructions: The latter are proof of what a jury found beyond a reasonable doubt, and the former by law must include the specific elements that must be so found for conviction.[2] Accord *United States v. Thompson*, 421 F.3d 278, 282 (4th Cir. 2005) ("The common denominator of the approved sources is their prior validation by process comporting with the Sixth Amendment."). Recourse to charging documents and jury instructions thus ensures that a defendant's prior conviction is labeled a "crime of violence" *only* when the requisite elements were actually and necessarily decided beyond a reasonable doubt as part of the conviction.

Likewise, issue preclusion provides coherent justification for a "categorical approach" that bypasses facts or determinations elicited at trial but *not* found in the charging documents or jury instructions. In the instant case, for example, Andrews invokes observations of the trial judge in his prior case to the effect that the "victim" may have consented. See Appellant's Br. at 17-19. The observations are of no help to him. Under the law governing the prior conviction neither consent nor its absence was relevant; accordingly, no finding one way or the other could have been *necessary* to the conviction. Here the *Taylor* requirements themselves exclude fact statements that would not meet the criteria for issue preclusion.

---

[2] Because the rules limiting variances between indictment and proof are a bit porous, however, see *United States v. Baugham*, 449 F.3d 167, 175 (D.C. Cir. 2006), the indictment or information may be a somewhat defective tool for exact ascertainment of the crime of conviction.

Second, a focus on preclusion also helps clarify *which* facts may appropriately be drawn from the charging documents and jury instructions. Reflecting congressional desire for a "categorical approach," *Taylor* and *Shepard* permit inquiry beyond the statutory text for the limited purpose of determining the necessary elements of a defendant's crime when the statute in question prohibits offenses both covered and not-covered by the definition of a "crime of violence." This exercise is akin to a court's determination of which elements would be precluded as "necessarily decided" and therefore conclusively resolved by prior litigation. The analogy reminds us that not every fact which happens to be decided is actually *necessary* to the prior judgment or conviction, a point that *Taylor* and *Shepard* treated as central. See *Shepard,* 544 U.S. at 21.

Consider then the Seventh Circuit's *en banc* decision in *United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997). There the court's appraisal of whether the statutory rape of which defendant had previously been convicted posed a "serious potential risk of physical injury" turned in significant part on the fact that the victim was 13 years old (as opposed to 15, for example). See *id*. at 387-89. But the statute under which the defendant was charged simply criminalized "sexual contact or sexual intercourse with a person who has not attained the age of 16." *Id*. at 384 (citing Wis. Stat. § 948.02(2)). A finding that the victim was younger than, say, 15, was in no way necessary to the conviction; it was established simply because the defendant happened to plead guilty to an information that stated the victim's date of birth. *Id*. Analogizing the *Taylor* inquiry to one of issue preclusion makes clear why this is troubling: The *Shannon* decision is based in large part on a statement that, while contained in a charging document, was not truly necessary to the crime charged nor worth quarrelling about from the perspective of the parties (so long as the victim's age was under 16). See

Restatement (Second) of Judgments § 27 cmt. j (1982) ("The appropriate question, then, is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment."); *id*. cmt. h (1982) ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta . . . .").[3]

The question whether a particular finding was necessary for conviction might have been critical in a quite plausible variation on today's case. As the court's opinion makes clear, judicial readiness to include statutory rape as a crime of violence has turned in material part on the dangerous diseases associated with sexual contact—dangers of which a minor is unlikely to have been adequately aware when giving consent. Yet while the transmittal rates from oral sex may be difficult to determine with accuracy, they are universally regarded as significantly lower than for conventional sex. See, e.g., Primary HIV Infection Associated with Oral Transmission, http://www.cdc.gov/hiv/resources/factsheets/oralsexqa.htm; see also Oral Sex, http://www.stanford.edu/group/SHPRC/

---

[3] Reliance on the alleged age of the victim enabled the court in *Shannon* to disaggregate offenses under Wisconsin's statutory rape provision, thereby leaving for another day whether statutory rape of a 14-year-old or 15-year-old would qualify as a crime of violence. See *Shannon*, 110 F.3d at 389 ("[O]ur decision leaves unresolved the proper treatment of cases in which the victim of the statutory rape is above the age of 13."). There are obvious advantages to such disaggregation, see *United States v. Chambers*, 473 F.3d 724 (7th Cir. 2007), but, as the last paragraph of this opinion argues, there is at least a serious linguistic difficulty with using fact variations irrelevant to a specific criminal offense to apply a sentence enhancement purportedly based on the fact of *conviction*.

ch4_ora.html. Suppose (1) the record suggested that the transmittal rates for oral sex were lower than for conventional sex by a margin sufficient to preclude a finding that it generated a serious risk of physical injury; (2) the prosecution in the initial case claimed that defendant had engaged in both forms of sexual conduct; but (3) the statute and jury instructions did not differentiate between the two acts and the jury found the defendant guilty simply of the basis of the generic element of "sexual conduct." In this hypothetical, we could not say that facts sufficient to show a "serious risk of physical injury" had been actually and necessarily decided in reaching the conviction. Cf. Restatement (Second) of Judgments § 27 cmt. i (1982) ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone."). Thus, under the assumptions used in this example, the prior conviction could not be classified as a "crime of violence."

Two remaining complexities: First, prior convictions triggering sentence enhancements will commonly be from a different jurisdiction, and in such cases there will be a want of mutuality. But the Supreme Court has found that a lack of mutuality is not so troubling as to require an across-the-board ban on the offensive use of issue preclusion in civil cases where mutuality is missing. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979). Although the circumstance should alert courts to exercise special care in assuring themselves there would be no unfairness in applying issue preclusion, it seems as weak a basis for a categorical rule here as in the civil context.

Second, courts may be tempted to rely on facts admitted by the defendant in a prior proceeding, or which otherwise seem indisputable. This reflects a natural resistance to the

lumpiness of a truly categorical approach, which forces courts to treat what may seem large and somewhat diverse swaths of conduct as "crimes of violence" (or not).  See supra n.3.  But sentence enhancements for prior convictions are just that—for *convictions*.  Conviction-based enhancements should not rest on collateral evidence of the defendant's bad character.  Those facts can flow into the sentencing decision independently, as a basis for the sentencing judge's exercise of discretion.