WILLIAMS, Senior Circuit Judge,
concurring.
I join the majority opinion, but write separately to discuss some principles that I believe underlie our decision. I particularly want to address the relation between: (1) Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which prescribes how a sentencing court should assess whether a prior conviction was for a “crime of violence”; (2) Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which excepts prior convictions from the requirement of Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that factors increasing a sentence beyond the statutory maximum be found by a jury beyond a reasonable doubt; and (3) conventional principles of issue preclusion.
In Taylor the Supreme Court held that a court sentencing under the Armed Career Criminal Act could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was a “crime of violence.”[1] The Court affirmed this narrow exception to Congress’s “categorical approach” in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), but strictly curtailed recourse to a larger set of sources, such as police reports.
The rationale and scope of Taylor’s exception pose difficult methodological questions. Why are we limited to the indictment, information, and jury instructions? And are we limited as to which facts we may draw from those sources? In the present case, the happenstance that our review is only for plain error has largely mooted these questions; future courts will often lack that advantage.
In Shepard at least four members of the Court suggested that Taylor reflects Sixth Amendment concerns subsequently voiced in cases such as Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. See Shepard, 544 U.S. at 24, 125 S.Ct. 1254; but see id. at 37, 125 S.Ct. 1254 (O’Connor, J., dissenting) (“[Tjoday’s decision reads Ap-prendi to cast a shadow possibly implicating recidivism determinations, which until now had been safe from such formalism.”). And, indeed, Taylor does mesh nicely with the Almendarez-Torres exception from Apprendi. Taylor directs courts to look to the fact of prior conviction, and Almenda-rez-Torres allows them to rely on that fact without meeting Apprendi’s requirement of a jury finding beyond a reasonable doubt.
Resting Taylor’s exception on the rationale of Almendarez-Torres may raise more questions than it answers, however. Almendarez-Torres itself relied on an arguably formalistic distinction between elements and sentencing factors, see 523 U.S. at 229-35, 118 S.Ct. 1219, a distinction that has since been heavily eroded by the Ap-prendi line. See Shepard, 544 U.S. at 27, 125 S.Ct. 1254 (Thomas, J., concurring) *900 (“Almendarez-Torres, like Taylor, has been eroded by this Court’s subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that Almendarez-Torres was wrongly decided.”); see also Apprendi, 530 U.S. at 520-21, 120 S.Ct. 2348 (2000) (Thomas, J., concurring); but see Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). The question is whether Taylor can survive these developments, and in what form, or whether its exception now amounts to constitutional error, as Justice Thomas has suggested. Compare Shepard, 544 U.S. at 27, 125 S.Ct. 1254 (Thomas, J., concurring) (“Taylor and today’s decision thus explain to lower courts how to conduct factfinding that is, according to the logic of this Court’s intervening precedents, unconstitutional in this very case.”), with id. at 30-31, 125 S.Ct. 1254 (O’Con-nor, J., dissenting) (“Taylor left room for courts to determine which other reliable and simple sources might aid in determining whether a defendant had in fact been convicted of generic burglary.... I would expand that list to include any uncontra-dicted, internally consistent parts of the record from the earlier conviction.”).
Fortunately, I believe Taylor’s, readiness to rely on charging documents and jury instructions can be sustained independently of Almendarez-Torres’s historical treatment of recidivism as a sentencing factor, namely, by reliance on an entirely non-formalistic principle of litigation: issue preclusion.
The standard application of issue preclusion requires that a party be estopped from relitigating an identical issue previously decided if three conditions are satisfied:
(1)The issue must have been actually litigated, that is contested by the parties and submitted for determination by the court.
(2) The issue must have been actually and necessarily determined by a court of competent jurisdiction in the first trial.
(3) Preclusion in the second trial must not work an unfairness.
Milton S. Kronheim & Co. v. District of Columbia, 91 F.3d 193, 197 (D.C.Cir.1996) (internal punctuation omitted).
Though most applications of issue preclusion occur in civil litigation, the “principle is as applicable to the decisions of criminal courts as to those of civil jurisdiction.” Frank v. Mangum, 237 U.S. 309, 334, 35 S.Ct. 582, 59 L.Ed. 969 (1915). Most invocations in the criminal arena are by the defendant, on the basis of either the Double Jeopardy Clause, Ashe v. Swenson, 397 U.S. 436, 447, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), or due process more generally, see Akhil Reed Amar & Jonathan L. Marcus, Double Jeopardy Law After Rodney King, 95 Colum. L.Rev. 1, 31 (1995) (“[T]he Ashe idea must be rooted outside the strict text of the Double Jeopardy Clause, in the more spacious — but also more flexible, less absolute — language of due process.”). See, e.g., Green v. United States, 426 F.2d 661 (D.C.Cir.1970) (per curiam) (precluding the Government from relitigating a question of fact determined in defendants’ favor in a previous partial verdict). Offensive uses in criminal suits are extremely rare, see Richard B. Ken-nelly, Jr., Precluding the Accused: Offensive Collateral Estoppel in Criminal Cases, 80 Va. L.Rev. 1379 (1994) (collecting cases), despite judicial acknowledgements of the theoretical appropriateness, as in Frank v. Mangum. One reason may be that issue preclusion is inapt for the superficially most inviting use — cases where a prior conviction is an element of the new crime; there, the only necessary “fact” is the existence of the prior conviction itself. Id. at 1381-82 n. 12.
*901 But for sentencing provisions that turn on particular characteristics of a prior conviction, the court must decide not only the fact of conviction but the facts determined by that conviction. And in this context, a sentencing court would seem able to rely on issue preclusion without offending any of the interests reflected in the Apprendi-line of cases. After all, the facts to be introduced and precluded from contestation at sentencing will have been established beyond a reasonable doubt by a jury (unless waived).
Moreover, reliance on the principles of preclusion provides contour to the holdings of Taylor and Shepard, while at the same time providing support for Almendarez-Torres’s outcome without the formalism of its analysis. First, by focusing on precluded issues, it becomes clear why Taylor and Shepard limited inquiry to charging documents and jury instructions: The latter are proof of what a jury found beyond a reasonable doubt, and the former by law must include the specific elements that must be so found for conviction.[2] Accord United States v. Thompson, 421 F.3d 278, 282 (4th Cir.2005) (“The common denominator of the approved sources is their prior validation by process comporting with the Sixth Amendment.”). Recourse to charging documents and jury instructions thus ensures that a defendant’s prior conviction is labeled a “crime of violence” only when the requisite elements were actually and necessarily decided beyond a reasonable doubt as part of the conviction.
Likewise, issue preclusion provides coherent justification for a “categorical approach” that bypasses facts or determinations elicited at trial but not found in the charging documents or jury instructions. In the instant case, for example, Andrews invokes observations of the trial judge in his prior case to the effect that the “victim” may have consented. See Appellant’s Br. at 17-19. The observations are of no help to him. Under the law governing the prior conviction neither consent nor its absence was relevant; accordingly, no finding one way or the other could have been necessary to the conviction. Here the Taylor requirements themselves exclude fact statements that would not meet the criteria for issue preclusion.
Second, a focus on preclusion also helps clarify which facts may appropriately be drawn from the charging documents and jury instructions. Reflecting congressional desire for a “categorical approach,” Taylor and Shepard permit inquiry beyond the statutory text for the limited purpose of determining the necessary elements of a defendant’s crime when the statute in question prohibits offenses both covered and not-covered by the definition of a “crime of violence.” This exercise is akin to a court’s determination of which elements would be precluded as “necessarily decided” and therefore conclusively resolved by prior litigation. The analogy reminds us that not every fact which happens to be decided is actually necessary to the prior judgment or conviction, a point that Taylor and Shepard treated as central. See Shepard, 544 U.S. at 21, 125 S.Ct. 1254.
Consider then the Seventh Circuit’s en banc decision in United States v. Shannon, 110 F.3d 382 (7th Cir.1997). There the court’s appraisal of whether the statutory rape of which defendant had previously been convicted posed a “serious potential risk of physical injury” turned in signifi *902 cant part on the fact that the victim was 13 years old (as opposed to 15, for example). See id. at 387-89. But the statute under which the defendant was charged simply criminalized “sexual contact or sexual intercourse with a person who has not attained the age of 16.” Id. at 384 (citing Wis. Stat. § 948.02(2)). A finding that the victim was younger than, say, 15, was in no way necessary to the conviction; it was established simply because the defendant happened to plead guilty to an information that stated the victim’s date of birth. Id. Analogizing the Taylor inquiry to one of issue preclusion makes clear why this is troubling: The Shannon decision is based in large part on a- statement that, while contained in a charging document, was not truly necessary to the crime charged nor worth quarrelling about from the perspective of the parties (so long as the victim’s age was under 16). See Restatement (Second) of Judgments § 27 emt. j (1982) (“The appropriate question, then, is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment.”); id. emt. h (1982) (“If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta .... ”).[3]
The question whether a particular finding was necessary for conviction might have been critical in a quite plausible variation on today’s case. As the court’s opinion makes clear, judicial readiness to include statutory rape as a crime of violence has turned in material part on the dangerous diseases associated with sexual contact — dangers of which a minor is unlikely to have been adequately aware when giving consent. Yet while the transmittal rates from oral sex may be difficult to determine with accuracy, they are universally regarded as significantly lower than for conventional sex. See, e.g., Primary HIV Infection Associated with Oral Transmission, http://www.cdc.gov/hiv/resources/ factsheets/oralsexqa.htm; see also Oral Sex, http://www.stanford.edu/group/ SHPRC/ch4_ora.html. Suppose (1) the record suggested that the transmittal rates for oral sex were lower than for conventional sex by a margin sufficient to preclude a finding that it generated a serious risk of physical injury; (2) the prosecution in the initial case claimed that defendant had engaged in both forms of sexual conduct; but (3) the statute and jury instructions did not differentiate between the two acts and the jury found the defendant guilty simply of the basis of the generic element of “sexual conduct.” In this hypothetical, we could not say that facts sufficient to show a “serious risk of physical injury” had been actually and necessarily decided in reaching the conviction. Cf. Restatement (Second) of Judgments § 27 emt. i (1982) (“If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.”). Thus, under the assumptions *903 used in this example, the prior conviction could not be classified as a “crime of violence.”
Two remaining complexities: First, pri- or convictions triggering sentence enhancements will commonly be from a different jurisdiction, and in such cases there will be a want of mutuality. But the Supreme Court has found that a lack of mutuality is not so troubling as to require an across-the-board ban on the offensive use of issue preclusion in civil cases where mutuality is missing. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Although the circumstance should alert courts to exercise special care in assuring themselves there would be no unfairness in applying issue preclusion, it seems as weak a basis for a categorical rule here as in the civil context.
Second, courts may be tempted to rely on facts admitted by the defendant in a prior proceeding, or which otherwise seem indisputable. This reflects a natural resistance to the lumpiness of a truly categorical approach, which forces courts to treat what may seem large and somewhat diverse swaths of conduct as “crimes of violence” (or not). See supra n. 3. But sentence enhancements for prior convictions are just that — for convictions. Conviction-based enhancements should not rest on collateral evidence of the defendant’s bad character. Those facts can flow into the sentencing decision independently, as a basis for the sentencing judge’s exercise of discretion.

. Although Taylor specifically involved prior burglaries, its holding covered other predicate offenses under that statute, as well as its residual provision for prior crimes involving "serious potential risk of physical injury,” see 495 U.S. at 600 n. 9, 110 S.Ct. 2143, which parallels the provision at issue here, i.e., § 2K2.1(a)(4)(A) of the U.S. Sentencing Guidelines.

. Because the rules limiting variances between indictment and proof are a bit porous, however, see United States v. Baugham, 449 F.3d 167, 175 (D.C.Cir.2006), the indictment or information may be a somewhat defective tool for exact ascertainment of the crime of conviction.

. Reliance on the alleged age of the victim enabled the court in Shannon to disaggregate offenses under Wisconsin's statutory rape provision, thereby leaving for another day whether statutory rape of a 14-year-old or 15-year-old would qualify as a crime of violence. See Shannon, 110 F.3d at 389 ("[0]ur decision leaves unresolved the proper treatment of cases in which the victim of the statutory rape is above the age of 13.”). There are obvious advantages to such disaggregation, see United States v. Chambers, 473 F.3d 724 (7th Cir.2007), but, as the last paragraph of this opinion argues, there is at least a serious linguistic difficulty with using fact variations irrelevant to a specific criminal offense to apply a sentence enhancement purportedly based on the fact of conviction.