HILL, Circuit Judge,
concurring dubitante, in which WILSON, Circuit Judge, joins:
Although I concur under the authority of Gay, I am not persuaded that it was correctly decided. I wish to join a tiny, but growing, chorus of doubt that a district court is permitted to enhance a sentence under the ACCA based in part upon a “failure to return” prior escape conviction.
Under § 924(e)(1), the district court is entitled to count as a “violent felony” for enhancement purposes a prior conviction for “conduct that presents a serious potential risk of physical injury to another.” In 1994, the Tenth Circuit held that escape is categorically such a violent felony because “every escape scenario is a powder keg,” United States v. Gosling, 39 F.3d 1140, 1142 (10th Cir.1994). Since then, every other court of appeals, save the D.C. and the Ninth Circuits, has adopted this rule.[1]
Although Gosling involved a prior conviction based upon an unauthorized departure from actual custody, some circuits have since specifically approved enhancements based upon escape convictions for “failure to return” to a halfway house after work-release. United States v. Mathias, 482 F.3d 743, 746 (4th Cir.2007); United States v. Rivera, 127 Fed.Appx. 543, 545 *1115 (2d Cir.2005) (same); United States v. Winn, 364 F.3d 7, 11 (1st Cir.2004) (failure to return to halfway house after break); United States v. Bryant, 310 F.3d 550, 554 (7th Cir.2002) (failure to return after work-release). In support of this holding, these courts have agreed with Gosling’s speculation that:
A defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees .... [E]ven in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious risk that injury will result when officers find the defendant and attempt to place him in custody.
39 F.3d at 1142.
But, even as the circuits clambered aboard the “escape as a violent felony” bandwagon, there were a few skeptics. Five years after its decision in Gosling, the Tenth Circuit, observing that it was bound by circuit precedent, affirmed an enhancement for a non-violent escape. In a special concurrence, however, Judge McKay took pains to distance himself from the panel’s assumption that Gosling established that escape was categorically a crime of violence. United States v. Adkins, 196 F.3d 1112, 1119 (10th Cir.1999) (McKay, J., concurring). Judge McKay asserted that it is wrong to assume that escape always constitutes “conduct that presents such a serious potential risk of physical injury to another,” as required by the ACCA. Specifically pointing to state statutes that make failure to return from work-release or other inmate release programs a felony escape, he wrote “[tjhere is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody, as in this case, and of failure to return from authorized departure from actual custody.” Id. To interpret the ACCA to permit enhancement based upon the latter type of escape, he concluded, would be an “abuse of language and a departure from the text of the statute.” Id.
In 2003, the D.C. Circuit specifically reserved the question of whether escape is categorically a crime of violence. United States v. Thomas, 333 F.3d 280, 282 (D.C.Cir.2003). The court observed that the argument that recapture of an escapee inherently contains a risk of violent encounter between the escapee and the arresting officers “proves too much.” The court noted that “the same is true as to the capture of any lawbreaker,” and that under this approach “all crimes become crimes of violence.” Id. The court declined to adopt such a rule.
In 2004, the First Circuit in Winn noted the reservations of both the D.C. Circuit and Judge McKay, quoting them both. Nonetheless, the court acknowledged that “the formal categorical approach is the well-established method in this Circuit for determining what constitutes a crime of violence,” and concluded that this approach “forecloses the conclusion” that a failure to return escape may be treated differently from a jail breakout. Winn, 364 F.3d at 12.
In 2006, however, the Ninth Circuit, in a failure to return case, refused to hold that escape is categorically a crime of violence. United States v. Piccolo, 441 F.3d 1084, 1088 (9th Cir.2006). The court reasoned that “[wjhile an escapee who flees a secured facility or the custody of an armed guard presents a serious risk of injury to himself and others, the same cannot be said for an escapee who leaves a halfway house with permission and fails to return.” Id. at 1089. Echoing Judge McKay, the court concluded that the “circumstances *1116 apparent in a walkaway escape are of an entirely different order of magnitude than escapes from jails and prisons.” Because of these differences, the court concluded that “convictions under [the federal escape statute] sweep too broadly to qualify as a crime of violence.” Id. at 1088, 1090.[2]
Finally, in United States v. Chambers, 473 F.3d 724 (7th Cir.2007), reviewing an enhancement based upon a “failure to report to prison” escape conviction, Judge Posner wrote:
As an original matter, one might have doubted whether failing to report to prison, as distinct from escaping from a jail, prison, or other form of custody, was a crime that typically or often “involves conduct that presents a serious potential risk of physical injury to another.” You could show up an hour late (without an excuse) and be guilty of a felony that could result in your receiving a 15-year mandatory minimum sentence under the Armed Career Criminal Act.
Id. at 725 (internal citation omitted).
Recognizing that his circuit, like the vast majority, is bound by the categorical approach to escape, Judge Posner held that “we shall adhere to the precedents for now.” Id. at 726 (emphasis supplied). He added:
But it is an embarrassment to the law when judges base decisions of consequence on conjecture, in this case a conjecture as to the possible danger of physical injury posed by criminals who fail to show up to begin serving their sentences or fail to return from furloughs or to halfway houses.

Id.

He further noted that the speculation in Gosling about the possibility of violence during recapture of an escapee is “conjecture floating well free of any facts — even the facts of Gosling.” Id. at 727.[3] He wrote:
The opinion says nothing about the nature of Gosling’s escape, but the reference to escaping from a jail suggests that the court wasn’t thinking about walkaway escapes, or failure to return or report, but about jail breaks .... Its ruminations should not be treated as authoritative in a case that does not involve a jail break.

Id.

Judge Posner suggests that both the Sentencing Commission and the Congress should address this problem.[4] In the in *1117 terim, I wish to express my agreement with those who reject the rule that escape is categorically a violent felony.[5]

. The Ninth Circuit refused to permit the enhancement, holding that a peaceful failure to return accompanied by the defendant’s voluntary surrender four days later, is not a crime of violence under the Sentencing Guidelines. United States v. Piccolo, 441 F.3d 1084, 1089-90 (9th Cir.2006). The D.C. Circuit reserved the same issue in United States v. Thomas, 333 F.3d 280, 282-83 (D.C.Cir.2003). As the panel opinion observes, the courts uniformly treat "crimes of violence” under the Guidelines and "violent felonies” under the ACCA the same.

. The court also noted that the Sentencing Guidelines specifically call for a four-level reduction in the sentence for conviction of escape from non-secure facilities, finding this fact "irreconcilable” with the position that the same escape can later trigger a fifteen-year mandatory minimum sentence. Piccolo, 441 F.3d. at 1088.

. My conjecture is that prisoners who fail to return to halfway houses are inviting re-arrest in order to avoid the imminent release implied by the halfway house stage of incarceration. Such prisoners seek the security of incarceration. I speculate that they are among the least likely escapees to resist rearrest. In the absence of proof otherwise, I doubt that my speculation is any less reliable than that of the Gosling court.

."The Sentencing Commission, or if it is unwilling a criminal justice institute or scholar, would do a great service to federal penology by conducting a study comparing the frequency of violence in escapes from custody to the frequency of violence in failure to report or return. Should it turn out that the latter frequency is very low, this would provide a powerful reason to reexamine Bryant and [United States v.] Golden [, 466 F.3d 612 (7th Cir.2006)]. Alternatively, Congress, which has investigative tools, might examine the issue with a view toward a possible clarification of 18 U.S.C. § 924(e)(1).” Chambers, 473 F.3d at 724. Recently, in James, the Supreme Court cited Chambers in its discussion of the relevance of empirical analysis in the determination of whether an unenumerat- *1117 ed crime poses a serious risk of violence. 127 S.Ct. at 1596.

. Like the Florida statute at issue in this case, many state statutes define a failure to return to a halfway house as "escape.” See Fla. Stat. § 945.091(4). Thus, a conviction for or plea of guilty to such a statute — even for a failure to return — counts as a violent felony. In Taylor, however, the Supreme Court reaffirmed that ordinarily federal law is not to be construed so that its application is dependent upon state law. 495 U.S. at 590, 110 S.Ct. 2143. Applying that principle to the meaning of burglary as used in the ACCA, the Court rejected Missouri's definition of burglary in favor of a “generic” meaning and remanded the case to the trial court to determine if the defendant’s conviction for burglary in that case corresponded to such a generic definition. Id. at 602, 110 S.Ct. 2143.
This, it seems to me, presents a sensible solution to the problem of categorizing escape as a violent felony. Adoption by the federal courts of a generic federal definition of escape that would include unauthorized departures from actual custody, but exclude a failure to return after an authorized departure from a non-secure facility would further the intent of the statute to enhance the sentences of defendants with prior convictions for crimes with a "serious potential for violence,” without permitting that intent to be trumped by "technical definitions and labels under state law." Taylor, 495 U.S. at 590, 110 S.Ct. 2143.
Judge Posner makes a similar suggestion in Chambers: "There would be no impropriety in dividing escapes, for purposes of 'crime of violence' classification, into jail or prison breaks on the one hand and walkaways, failure to report, and failure to return, on the other. The sentencing judge would not have to dig beneath the charging document or the other, limited evidence on which a judge is permitted by Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), to decide which bin a conviction for escape belonged in.” 473 F.3d at 726.